A. P. RYAN ET AL. V. S. B. MAXEY ET AL.

1. MARRIED WOMEN—ESTOPPEL.—One of two minors died leaving a large estate incumbered by debts incurred by their guardian; the heirs of the deceased minor applied for partition, which was resisted by the guardian insisting that he should be kept harmless from debts he had incurred on account of the deceased. The heirs then united in an application to the probate court for sale of lands to pay the debts and for partition of the remainder. Upon this the court ordered sale of some lands to pay debts, and the remainder, lands and slaves, was partitioned among the heirs: *Held*, that the married women participating in the proceedings were concluded by the sale under said order.

2. ESTOPPEL—FRAUD.- Married women will not be allowed to perpetrate a fraud in recovering property sold at their instance and for their benefit or that of their estate.

APPEAL from Collin.   Tried below before the Hon. W. H. Andrews.

*K. R. Craig* and *V. W. Hale,* for appellants.

*Throckmorton & Brown,* for appellees.

GOULD, ASSOCIATE JUSTICE.—Appellants, claiming as the heirs of Mariah T. Fulton, deceased, brought this suit to recover of S. B. Maxey one thousand and seventy-two acres of land in Collin county.   The other defendants voluntarily made themselves parties and united themselves with Maxey in answering, in substance, as follows : That T. F. Roberts was, at the time of the death of Mariah, in 1864, her lawful guardian and in possession of her property, being at the same time guardian of one of the plaintiffs, Hugh Fulton ; that there was no administration on her estate, which was large, but that some of the plaintiffs made application to the probate court in which the guardianship was pending for an order for the partition of said estate, to which proceedings the others of the plaintiffs became parties; that the guardian assumed settling up the existing debts against the estate, asking for an order to sell property to pay the debts, and that with the consent of all of the plaintiffs an order was made for the sale of the land in the controversy and for the partition of the balance of the estate amongst the heirs, the plaintiffs; that in accordance with said order the remainder of the estate was so partitioned, and the land in question sold for its full value, the sale confirmed and deed made by the guardian to the purchaser under whom defendants claim; that the proceeds of the sale were applied to the payment of the debts of the estate, and that to all these proceedings the plaintiffs were parties, and were thereby estopped from claiming the land.

A general exception to this answer was overruled, and

a jury being waived the court, after hearing the evidence, gave judgment for the defendants.

The main facts set up in the answer were agreed on, including the fact that the guardian, Roberts, refused to turn over the residue of the estate to the heirs unless the heirs would leave a sufficiency in his hands to meet his liabilities as guardian, and that upon (their) entering into said agreement said residue was distributed. The application to the probate court was made in January, 1865, and prayed for partition, " after reserving sufficient in hands of guardian to pay all debts and expenses." It further appears that the land in controversy was so reserved and set apart, and that the balance of the estate, including slaves, was at once, in February, 1865, distributed by commissioners appointed by the court, whose action was acquiesced in by the heirs. Afterwards the sale was made, but proper notice not appearing to have been given, it was not confirmed. A resale was ordered, and made in December, 1866, and when the proceeds were collected by enforcing the vendor's lien they were applied to the payment of the debts of the estate approved by the court, the amount proving insufficient by the sum of $200, which was due the guardian himself. The guardian testified that the object of plaintiffs was to avoid the expense of administration and get prompt possession of the property, and that it was agreed by the plaintiffs that the court might order the sale of the land in controversy to pay the debts. Roberts continued to be guardian of plaintiff Hugh for some years after the death of Mariah.

We are of the opinion that the exceptions to the answer were properly overruled, and that judgment was properly rendered for the defendants.

Whether the jurisdiction of the court immediately terminates with the death of the ward, or whether it might not still make such orders as were necessary to settle up the guardian's accounts and secure him harmless, are ques-

tions discussed in the briefs at some length, but on which we have not found it necessary to pass in arriving at a decision. The case of Berry v. Young, 15 Tex., 369, is not regarded by us as having been intended to decide any such question. Whether the court in this case had or had not jurisdiction to order the sale, under the facts set up in the answer and established by the evidence, the plaintiffs were estopped from enforcing their claim to the land. By their agency and procurement the order was made, the object being to raise funds to pay debts which were a charge on the estate. The proceeds were applied to their benefit, and, as the result, they received the remaining part of the estate free from incumbrance. The evidence is satisfactory that the parties were not merely passively consenting to the sale, but that they were active agents in procuring it to be ordered. In truth, the court and the guardian may be regarded as their agents in making the sale. The purchaser was justified in relying on these acts as authorizing the sale. The case is quite similar to that of Grande v. Chaves, 15 Tex., 550, where, though the administration was held void, a sale made by the administrator was held valid as against the heirs who had urged it and who had received the proceeds. The court says: "Their acts show such acquiescence as to amount to a ratification, and they cannot be permitted to disturb the rights of purchasers under sales freely made and with their consent, and from which they have received the benefit."

At the time the order and sale were made Hugh Fulton was represented by his guardian, and was bound by his assent and acts. (Dancy v. Strickling, 15 Tex., 559.) The record discloses no proffer on his part since he has become of age to release the benefits he received from the sale.

Two of the heirs were at that time married women. One of these united with her husband in making the application to the court, and the other, with her husband, voluntarily became a party to the proceeding, and agreed to the order.

To hold that they were not estopped would be to allow them to perpetrate a fraud.

This case differs from Fitzgerald *v.* Teiner, decided at the present term, in several particulars. There the wife was merely willing to the sale; here the wives united with their husbands in going into court and procuring it. Whilst Mrs. Fitzgerald, in common with the family, received the benefit of the services of the negro woman paid for the land, the negro did not become her separate property, and her benefit was only incidental. Here the proceeds went to relieve the separate estates of the wives from an incumbrance. As in the case of Dalton *v.* Rust, the wives went into court; and it may be assumed that the court was assured that they came there voluntarily and for their own benefit. Purchasers might well assume that even married women could not dispute the validity of the sale which they had thus been active in bringing about, and the benefits of which they were to receive, and did receive.

It is believed that the statute regulating the mode in which married women may convey their property had for its chief object their protection. To allow a married woman to profit by her own positive fraud, such as false representations or admissions designedly made to deceive, or to allow her to perpetrate a fraud by disputing the validity of a sale of her property which was at the time for the benefit of her estate, made with her assent, or at least, if made by her procurement, the proceeds of which she is either still enjoying, or has consumed to the advancement of her separate estate, would in either case be to pervert the statute into an instrument of fraud. Where such facts are properly set forth in the pleadings, with appropriate prayer for relief, she will not be allowed to recover without doing equity. (Cravens *v.* Booth, 8 Tex., 243; Story's Eq., secs. 385, 385*a*, and reference.)

The judgment is affirmed.

AFFIRMED.