R. B. HARLE ET AL. V. LANGDON'S HEIRS.

(Case No. 1396.)

1. JUDGMENT.— Where A. purchases land from B. prior to the rendition of a judgment foreclosing a vendor's lien on the land for the benefit of C., A., not being made a party to such judgment, is not bound by it. No action can be taken to vacate the satisfaction of such judgment against A. alone.
2. CONSOLIDATION.— In two suits, where the rights and privity of the plaintiff in one are the same as those of the defendant in another, the subject matter being the same, and no prejudice to the right of any person is shown, the consolidation of the two causes, though technically irregular, would not be sufficient ground for a reversal of the cause.
3. LIS PENDENS.— The plea of *lis pendens* cannot be taken advantage of where the party pleading it is not affected by the judgment in the suit pending; as, where his right depended upon a lien which that judgment was to enforce, and not the judgment itself.

4. SAME.— Where the judgment enforcing such lien was known to the party pleading *lis pendens*, and he relied upon it, this is an admission on his part that he knew of the adverse claim asserted in that suit, and in such case the law affects him with notice that such judgment might be set aside on writ of error, and the right of the adverse party to prosecute such a writ within the prescribed legal time.

5. JUDICIAL SALE — VOLUNTARY PURCHASES.— While the correct rule is, that a judicial sale, or sale under execution upon a decree or judgment authorizing such sale, though erroneous and not void, will be sustained where a stranger to the judgment is the purchaser, even where he knows that an appeal is pending or contemplated, yet such rule rests upon a policy which has not been made to apply to purchases voluntarily made from a party to the suit. Treadway *v.* Eastburn, 57 Tex., 211; Stroud *v.* Casey, 25 Tex., 754, and other authorities cited and approved.

6. TITLE — WRIT OF ERROR.— A purchaser from one who has obtained a judgment in a suit of trespass to try title does not take a title incapable of being annulled by a reversal of the judgment upon a writ of error, sued out subsequently to his purchase. Clarey *v.* Marshall's Heirs, 4 Dana (Ky.), 99, cited, approved and quoted.

7. WRIT OF ERROR — NEW SUIT.— A writ of error is not such character of proceeding in this state as constitutes a new suit. Moore *v.* Moore, 59 Tex., 54; Brackenridge *v.* San Antonio, 39 Tex., 66; Gibbs *v.* Belcher, 30 Tex., 85, discussed.

8. SAME.— All judgments are to be considered in the light of laws providing a remedy, and a time within which they may be reversed, if erroneous, by an appellate jurisdiction, and all persons voluntarily purchasing during such time are purchasers *pendente lite*.

9. IMPROVEMENTS — LIMITATIONS.— A *pendente lite* purchaser cannot set up a claim for improvements nor plead the statute of limitations.

APPEAL from Navarro. Tried below before the Hon. L. D. Bradley.

The following statement of the case, in connection with the facts set out in the opinion, will be sufficient for a clear understanding of the case:

The litigation which was ended by the judgment from which this appeal is prosecuted is in regard to the title of a tract of six hundred acres of land, a part of the S. F. McCandless one-third of a league survey in Navarro county; the facts in regard to the same, as set up in appellants' pleadings, are as follows: On the 2d of April, 1861, David McCandless, then the owner of said land, sold and conveyed the same to R. E. and F. S. Tate, reserving a "vendor's lien" for the purchase money. Tate and wife transferred to Mc-Candless in payment for the land in suit W. A. Lockhart's note to them for $1,410.42 and by them indorsed and its payment gurantied.

On the 2d of June, 1864, Tate and wife sold and conveyed the same to W. S. Langdon (ancestor of appellees), with notice to him of the unpaid "vendor's lien" of McCandless. On the 15th of

September, 1866 (Langdon having in the meantime left the state), McCandless, the original vendor, brought suit against Tate and wife and W. A. Lockhart, his vendees, in the district court of Navarro county, to foreclose his "lien" on the land, and obtained a final judgment of "foreclosure," with an "order of sale." On the 3d of May, 1868, the sheriff sold the land and made a deed for same to said McCandless, who became the purchaser, paying therefor $100, which bid was credited on his execution. This judgment was never appealed from nor reversed.

On the 20th July, 1871, McCandless, to perfect his title, brought suit (Langdon being then dead) against the heirs of W. S. Langdon, of trespass to try title to said six hundred acres of land. On the 25th November, 1872, there was a final judgment for the plaintiff, McCandless, against the heirs of Langdon. After motion for a new trial made and overruled, notice of appeal was given by defendants, but it was not perfected, no appeal bond was given, and the appeal was abandoned. This suit was numbered 901.

On the 5th February, 1872, McCandless sold and conveyed the land to Jno. B. Jones, by deed of general warranty duly recorded.

On the 2d April, 1873, Jno. B. Jones sold and conveyed three hundred acres of the tract to the defendant, R. B. Harle, for a valuable consideration, by deed of general warranty, duly recorded.

On the 1st of July, 1874, the heirs of Langdon sued out a writ of error to the judgment of the district court in the suit of McCandless v. The Heirs of Langdon, and the same was reversed, and the cause remanded for a new trial by the supreme court, at the Austin term, 1881, of the court. This suit is No. 2003.

In the meantime, on August 4, 1880, the heirs of Langdon brought suit of trespass to try title against defendants, Jones and Harle, for the six hundred acres in controversy. Both suits were pending and came on for trial at the July term, 1881, of the district court of Navarro county, at which time the heirs of McCandless made themselves parties plaintiffs to the suit, No. 941, by suggesting the death of their father, and Jno. B. Jones, one of the defendants in suit No. 2003, came in, and a judgment by confession was rendered against him for three hundred acres of said land claimed by him. The defendant Harle answered and pleaded in bar of plaintiffs' action, in substance, as follows:

That he had the superior title to the land, having derived his title to same through a judicial sale under a final judgment of the district court of Navarro county.

That he was a *bona fide* purchaser, without notice of any litigation pending with regard to said land.

He also pleaded the statutes of limitations of three and five years, and suggested "improvements in good faith."

These two suits were, on motion of appellees, over the objection of defendant Harle, consolidated, and, on the hearing of the consolidated cause, the district court sustained the general exceptions of the heirs of Langdon to the answers of defendant Harle, and he declining to amend further, gave judgment against him for the three hundred acres in controversy.

*Reed & Reed*, for appellants, cited: French v. Grenet, 57 Tex., 273; Wallace v. Campbell, 54 Tex., 87; McAnear v. Epperson, 54 Tex., 220; Wheeler v. Ahrenbeak, 54 Tex., 535; Hill v. Spear, 48 Tex., 583; Hollis v. Dashiell, 52 Tex., 187; Taylor v. Snow, 47 Tex., 463; Peticolas v. Carpenter, 53 Tex., 23; Mosely v. Gainer, 10 Tex., 394; Taylor v. Rowland, 26 Tex., 293; Stroud v. Casey, 25 Tex., 744; Gibbs v. Belcher, 30 Tex., 79; Wofford v. McKinna, 23 Tex., 43; Sartain v. Hamilton, 12 Tex., 220; R. S., art. 3193.

*R. Q. Mills*, also for appellants, cited: 1 Story's Eq., §§ 405, 406; 2 Sug. Ven., 536; Freeman on Judgments, 484; Rorer on Judicial Sales, 138, 139, 898–902; Kinsman v. Kinsman, 2 Russ. & Mylne, 617; Scarborough v. Worsely, 2 Atk., 392; Price v. White, Bailey (S. C. Eq. Rep.), 244; Boone v. Childs, 10 Pet., 177; Taylor v. Boyd, 3 Hamm. (Ohio), 338; Fox v. Reeder, 28 Ohio, 181; Holbrook v. New York Zinc Co., 57 N. Y., 616; Fergus v. Woodward, 44 Ill., 374; Mulvey v. Gibbons, 87 Ill., 367; Eldridge v. Walker, 80 Ill.; Hobson v. Ewan, 62 Ill., 146; Gott v. Powell, 41 Mo.; Sayre v. Thompson, 28 Ark., 336; Howard v. North, 5 Tex., 290; Morton v. Welborn, 21 Tex., 772; Davis v. Roosevelt, 53 Tex., 305.

*Simpkins, Simpkins & Neblett*, for appellees, cited: Herndon v. Rice, 21 Tex., 455; Brown v. Lane, 19 Tex., 205; Stone v. Darnell, 25 Tex. Sup., 430; Burns v. Ledbetter, 56 Tex., 282; Peters v. Clements, 46 Tex., 115; Garrett v. Gaines, 6 Tex., 435; Meyberg v. Stegall, 51 Tex., 351; Pool v. Sanford, 52 Tex., 633; Whitman v. Willis, 51 Tex., 425; Crawford v. French, 25 Tex. Sup., 436; Loper v. Robinson, 54 Tex., 516; Cundiff v. Teague, 46 Tex., 475; Hickcock v. Bell, 46 Tex., 612; Moore v. Moore, 59 Tex., 54; Hart v. Mills, 38 Tex., 513; Brackenridge v. City of San Antonio, 39 Tex., 64.

STAYTON, ASSOCIATE JUSTICE.— On April 2, 1861, David McCand-less sold the land in controversy to R. E. & F. S. Tate, for which he received a note on Lockhart, which seems to have been indorsed by the Tates.    June 2, 1864, the Tates sold the land to W. S. Langdon. September 15, 1866, McCandless brought suit against the Tates and Lockhart on the note which he had received for the land, and asked a foreclosure of the vendor's lien.

To this suit Langdon was not made a party, and on May 3, 1868, McCandless obtained a judgment against the defendants in that suit for the amount due on the note and foreclosing the vendor's lien, and under this judgment he caused the land to be sold and himself became the purchaser, bidding therefor $100, which was credited on his judgment.

July 20, 1871, McCandless brought a suit of trespass to try title against two of the three children of Langdon, he being then dead, and also against Mrs. Langdon, who was also dead.

One of the children of Langdon made a party to the suit, as well as one that was not made a party, was a minor.    In that suit, on November 25, 1872, a judgment for the land was rendered in favor of McCandless.

On February 5, 1872, pending that suit, McCandless sold the land to John B. Jones, who on April 2, 1873, sold three hundred acres of it to the appellant Harle.

On July 1, 1874, the heirs of Langdon prosecuted a writ of error, and at the Austin term, 1881, of this court, the judgment in favor of McCandless was reversed and the cause remanded.    That cause is numbered 941.

August 4, 1880, the children of Langdon brought a suit against Jones and Harle for the land, and that is numbered 2003.

Judgment was rendered by confession against Jones for three hundred acres of the land.

Pending cause 941 McCandless died, and his heirs made them-selves parties thereto, but they in no respect changed the character of the suit, except that they alleged the purchase of the land by their ancestor and prayed that the satisfaction of his judgment against Lockhart and the Tates be vacated to the extent of his bid for the land, in case it should be found that Langdon's heirs had the better title to the land, and that a vendor's lien to that extent be established and enforced against the land.    Neither Lockhart nor either of the Tates was a party to this suit, and a demurrer was sus-tained to the pleadings of the heirs of McCandless.    This is assigned as error.

Causes 941 and 2003 were consolidated, and this is assigned as error.

The appellant Harle set up in his answer the purchase by Jones pending cause 941, and his purchase from Jones after a judgment was rendered in that cause and before a writ of error was sued out by the Langdon heirs, in bar of their action. To his pleading a demurrer was sustained and this is assigned as error.

The appellees not having been parties to the suit brought by McCandless against Lockhart and the Tates, no facts are shown which could make the judgment rendered in that case binding upon them. Lockhart and the Tates are not parties to either of the consolidated suits before us, and it certainly is true that no action could be taken to vacate satisfaction of judgment in that case in one in which they are not parties; and besides, McCandless got whatever title to the land Lockhart or Tate and wife had at the time he obtained judgment against them, and that this may not have been good title, nor any title at all, does not furnish sufficient ground for setting aside the satisfaction of judgment to the extent of his bid.

A case is not shown in which the purchaser failed to get title by the sale, such as the judgment debtor held, through some defect in the process or in the manner of its execution, as in Howard v. North, 5 Tex., 291; Brown v. Lane, 19 Tex., 203; Morton v. Welborn, 21 Tex., 774; Herndon v. Rice, 21 Tex., 455.

While the parties, in name, in the two suits, were not the same, yet in right and privity the plaintiffs in cause 941 were the same as the defendants in cause 2003, and the subject matter of the suit, so far as cognizable by the court with the parties before it, was the same in both cases, and at most the consolidation was only technically irregular, and in such case no prejudice to the right of any person having been shown to have resulted, the consolidation, even if irregular, would be no sufficient ground for reversing the judgment.

Neither Langdon nor his heirs were parties to the suit of McCandless against Lockhart and the Tates, and, as before said, no facts are stated which could make the judgment rendered in it in any manner binding on them; hence no title which they held could possibly pass by the sale at which McCandless bought.

It is contended, however, that, as Harle bought from Jones after the judgment was rendered in favor of McCandless in cause No. 941, against some of the children of Langdon, and before they sued out a writ of error, he is entitled to protection, although upon error

the judgment was subsequently reversed by this court. To support this proposition counsel for appellant have filed briefs which indicate great evidence of research and industry.

This is made the question in the case, and in disposing of it we will not take into consideration the facts that one of the defendants in that case was a minor, another dead at the time the suit was brought, and that one of the children of Langdon was not before the court at all in the case until after the reversal; nor need we consider what might be the effect of the fact that Harle bought from Jones, who was a purchaser from McCandless, after he brought suit, but before he obtained a judgment.

The naked question then is, whether a person buying land from one who has obtained a judgment in a suit of trespass to try title takes title which will not be annulled by a reversal of the judgment upon writ of error sued out subsequently to his purchase.

It is contended that there was no *lis pendens* at the time Harle bought from Jones, and that therefore the former should be protected from the effect ordinarily following the reversal of a judgment.

The office which *lis pendens* performs in regard to purchasers is simply to give notice of such right as is in litigation; and that no party to a pending suit may be deprived of the just results of litigation, every one who buys from a party pending a suit is held to take subject to the judgment to be rendered in the cause. When, in cases like this, notice is unimportant, the question of *lis pendens* or not is equally so.

It is not contended that the right of McCandless was based on the judgment in case 941, but upon a prior purchase, which, it is claimed, gave him title. The judgment gave him no other or greater title than he had when he brought that suit. It is, however, contended that the judgment in that case was evidence of his title on which a purchaser might rely in purchasing from him or from his vendee.

This position is suicidal when we consider the effect of the existence or non-existence of *lis pendens* on the right of a purchaser; for if it be said that the purchaser knew that the judgment in favor of McCandless had been rendered, and that he relied on it, and would not otherwise have purchased, this is an admission that he knew of the adverse claim asserted in that suit, and the law affects him with notice that such a judgment might be set aside upon writ of error, if erroneous, and of the right of the adverse party to prosecute such a writ within the time prescribed by law.

If the legal title of record had shown apparent title in McCand-

less, and the defendants in cause number 941 were claiming under that title, then, if their title was not of record, or otherwise known to a purchaser, *lis pendens* or not might be important; but whatever title McCandless had certainly passed by his deed to the Tates; nothing more than a lien, which in this case is not shown to have been an express lien, remained with him. This title passed to Langdon by the conveyance from the Tates, and it could not be reinvested in McCandless by a sale under a judgment to which neither Langdon nor his heirs were parties. Hence, as the appellees do not claim to hold under any title which McCandless claimed under his purchase through the judgment against Lockhart and the Tates, their title is not so derived as to make the question of notice through *lis pendens* of any importance, for it is not claimed that Harle had not full notice of the chain of title through which Langdon claimed.

It is true that a judicial sale, or a sale made under an execution, upon a decree or judgment authorizing it, which is, however, erroneous, but not void, will be sustained when a stranger to the judgment is the purchaser; and this even though he may know that an appeal, in which there is no *supersedeas*, is pending or contemplated.

This rule, however, rests upon a policy which has not been made to apply to purchases voluntarily made from a party to the suit. Mosely *v.* Gainer, 10 Tex., 396; Stroud *v.* Casey, 25 Tex., 754; Treadway *v.* Eastburn, 57 Tex., 211; Freeman on Judgments, 484, and citations; Gray *v.* Brignardello, 1 Wall., 634; McGoon *v.* Scales, 9 Wall, 31; Freeman on Executions, 345.

In the case of Clarey *v.* Marshall's Heirs, 4 Dana, 99, it appeared that the seller held under a deed made to him in 1817, in pursuance of the decree of a chancery court directing the deed to be made, the court having all of the parties in interest before it. In 1826 a bill of review was filed for the purpose of correcting the decree under which the deed was made, and this was done by so altering it as to withdraw from the operation of the decree and deed the land in controversy in the case. In the meantime, however, the person who held under the deed made by the commissioner under the chancery decree, sold the land to others, who, in an action in ejectment brought against them, set up the same defense which Harle sets up in this case.

In disposing of the case, Robertson, C. J., presents the questions so clearly that we here insert so much of the opinion as bears directly upon the questions in this case: "It has been often decided that a

*bona fide* purchaser under a decree or judgment, may, if the court has jurisdiction, hold the thing so purchased, notwithstanding a subsequent reversal of the judgment or decree for error or irregularity. But neither Edmundson nor his vendees can be protected by the principle of this judicial doctrine. That principle is one of supposed public policy altogether. As those who may be expected to purchase at judicial sales cannot be presumed to know whether (the court having jurisdiction) the judgment or decree is erroneous and may be reversed, and as it is a matter of great public concern that persons disposed to buy property at such sales should bid with confidence in the effectiveness of the sale, and should be protected by the law, whose interpreters and ministers invited them to buy, it has been deemed better, as a general rule, that such sales should not be frustrated, so far as the purchaser may be concerned, by a subsequent reversal of the judgment or decree; and that the person whose property was sold, rather than such a purchaser, should give it up. But none of this reasoning applies to this case. Edmundson was no purchaser under the decree in his favor. The decree itself erroneously gave him that to which he was not entitled; and the subsequent nullification of that decree necessarily divested him of all semblance of title derived only from the decree. Nor do his vendees stand in the attitude of purchasers under a judgment or decree. They voluntarily bought of him that to which he had an ostensible judicial right; but they had bought it, not under the authority or at the instance of a court or any officer of the law, and certainly took it — as his title — on his responsibility, and subject to all the contingencies to which the title of a vendor is ever liable. They bought only his right. They bought from *him*, and could not have acquired thereby a better or any other right than he had. His right was liable to defeasance; this they must have known, or should be presumed to have understood. *His title has been defeated,* and therefore *theirs*, which was only derivative, and depended *entirely* on *his, must* also have failed at the same instant. After his right had been transferred to them, they stood precisely as he would have stood had he never conveyed his interest to them. And of course when the decree, which was the only foundation of his and their title, was annulled, no title remained in them. No reconveyance was necessary, because nothing remained to be conveyed. The superstructure fell with the destruction of its foundation, . . . and we are of the opinion, also, that the appellants should be considered as *pendente lite* purchasers."

The following cases bear upon the same question: Debell *v.* Fox-

worthy's Heirs, 9 B. Mon., 228; Heirs of Ludlow v. Kidd's Execu-
tors, 3 Ohio, 550; Gilman et al. v. Hamilton et al., 16 Ill., 232. The
case quoted from, and others, go further than it is necessary to go
in this case to hold Harle precluded from asserting claim from the
fact that the judgment existed when he bought. The character of
the decree was different.

We have examined, so far as accessible, the authorities relied upon
by the appellant, for the proposition that a writ of error is the in-
stitution of a new suit, and however that may be under the English
system, and under the practice of the states to whose cases we have
been referred, we are of the opinion that such is not the character
of the proceedings in this state under a writ of error. Cheek v.
Rogers, 1 Tex., 441; Smith v. Gerlach, 2 Tex., 426; Lucketts v.
Townsend, 3 Tex., 128; Lacey v. Ashe, 21 Tex., 395.

In the following cases a writ of error is held to be but the pros-
ecution of the same suit instituted in the district court: Hart v.
Mills, 38 Tex., 513; Brackenridge v. San Antonio, 39 Tex., 66;
Hickcock v. Bell, 46 Tex., 613; Moore v. Moore, 59 Tex., 54.

In Brackenridge v. San Antonio it was held that a person who
purchased after a judgment which might have been appealed from,
but before any steps were taken to give this court jurisdiction of
the cause, was a purchaser *pendente lite.*.

In Moore v. Moore it was held that a writ of error revivified and
continued in force an injunction which the judgment of the district
court dissolved.

This question was not involved in the case of Gibbs v. Belcher,
30 Tex., 85. The question there was whether a judgment of the
district court, obtained upon a petition seeking damages for an as-
sault and battery made upon the plaintiff by the defendant, would
be vacated by the death of the plaintiff pending a writ of error,
and it was held that under such circumstances the action did not
abate. In the course of the opinion it was remarked that the writ
of error was a new suit. By which was meant no more than that
the cause had reached such stage in its prosecution that it did not
abate upon the death of the plaintiff.

Under our system, every judgment is to be read in the light of the
laws which provide a mode by and time within which they may be
revised and corrected if found erroneous by an appellate tribunal,
either upon appeal or writ of error; and all persons who volun-
tarily purchase property in litigation from a party to a suit, between
the time judgment is rendered and the time an appeal is perfected,
or a writ of error is sued out, must, in reason, be held to be pur-

chasers *pendente lite*, and to hold subject to have whatever claim they may so acquire set aside, if the judgment be reversed, and the cause be ultimately decided against the person under whom they claim.

In this respect, where the practice is as it is in this state, there can be no difference in principle between the prosecution of a cause by appeal or by writ of error. The legislature in each case has prescribed the time within which parties may prosecute their rights, and those who do so within the time prescribed cannot be charged with such want of diligence, in cases in which *lis pendens* becomes important, as to deprive them of any right which they had when the action was first brought.

If the time given by law to persons within which to prosecute appellate proceedings be too long, it rests with the legislature to change it. The exercise of such diligence as the law by express statute requires is enough; and he that does this cannot be said to be negligent to such extent as to deprive him of rights. Any other holding would be at war with our whole system, and especially so in actions of trespass to try title, as the law stood when this litigation commenced, and as it now stands in reference to actions brought prior to the adoption of the Revised Statutes.

The law then allowed a plaintiff to bring a second suit, if unsuccessful in the first, and prescribed the time within which this should be done. If the rule contended for by the appellant were the true one, such right of a plaintiff could be destroyed in a case in which judgment was in favor of a defendant, by his selling the land to some other person between the time the judgment was rendered and the time the second suit might be brought. Such a purchaser might, with as much show of reason, say that he bought relying upon a subsisting judgment as the person who buys under such circumstances as did the appellant Harle. We have considered whether Harle was a purchaser *pendente lite*, for the reason that he set up claim for improvements, and being of the opinion that he is such purchaser, it follows that he cannot assert such claim. It follows from what has been said, that the plea of limitation set up by him has nothing upon which to rest.

The judgment is affirmed.

Affirmed.

[Opinion delivered December 18, 1883.]