### BOWEN v. CLYMER et al.

(Circuit Court of Appeals, Fifth Circuit. February 2, 1897.)

### No. 543.

LIMITATION OF ACTIONS—POSSESSION OF LANDS BY HEIR—LITIGATION WITH ADMINISTRATOR.

Possession of land, held by one who claims it only as heir of a deceased owner, and who, during the whole of such possession, is litigating with the administrator of such deceased owner the validity of the administration, will not ripen into a title under statutes of limitation, good as against a purchaser from the administrator under an order of sale for payment of debts, made after the administrator's right is established; nor can the possession of one to whom the heir has conveyed pending the litigation, and who has knowledge of it, and of the nature of the heir's title, give any better right.

In Error to the Circuit Court of the United States for the Northern District of Texas.

De Edward Greer, for plaintiff in error.

Before PARDEE and McCORMICK, Circuit Judges, and MAXEY, District Judge.

McCORMICK, Circuit Judge.    R. D. Bowen, the plaintiff, brought this action against J. M. Clymer, W. J. Dorsett, G. W. Wharton, and N. P. Wharton, to try the title and recover the possession of land described in the pleadings.    The petition is in the statutory form.  The defendants pleaded the general issue, and pleaded specially the three, five, and ten years' statutes of limitation.    On the trial the judge instructed the jury to find a verdict in favor of the defendants, which action of the court is assigned as error.

The proof established or tended to show the following facts:    That one Earle Cravens departed this life, intestate, April 10, 1880, in Dallas county, Tex.; that at the time of her death she was the owner of the land in controversy; that one Mary P. Fortson was the sister and sole surviving heir of the deceased; that plaintiff and defendants claim through Earle Cravens as a common source of title; that one George F. Alford was appointed administrator of the estate of Earle Cravens on September 20, 1880, by the county court of Dallas county, Tex., and that he duly qualified and entered upon the duties of such administrator; that, at the time of this grant of administration, there were existing claims against the estate to the amount of more than $1,000; that on February 28, 1882, Mary Fortson, as sole heir, joined by her husband, filed her suit in the county court of Dallas county, Tex., in the administration of the estate of Earle Cravens, in which she attacked the grant of administration, on the ground that the court had no jurisdiction to grant the same, and asking that the same be dismissed, and the appointment of the administrator set aside, and that the grant of administration and all proceedings under it be declared null and void.    On May 22, 1882, the county court granted judgment as prayed for by the heir, and decreed that the administration was null and void.    On appeal to the district court, that court, on December 12, 1883, reversed the judgment of the county court, dismissed the suit of Mrs. Fortson, and established the validity of the administration.    From this judgment, Mrs. Fortson appealed to the supreme court, which, on December 5, 1884, reversed the judgment of the district court, and remanded the cause thereto for further proceedings therein.    On April 6, 1886, the district court adjudged and decreed that the administration was null and void, and that said Alford be removed as administrator, and his appointment be revoked, set aside, and held for naught.    From this judgment the administrator appealed to the supreme court, and that court, on June 18, 1889, rendered its judgment, reversing the judgment of the district court, and adjudged and decreed that the suit against the administrator be dismissed, and that their judgment be certified to the district court for observance.    On February 15, 1890, the district court, having received the mandate of the supreme court, rendered judgment thereon that the heir take nothing by her suit, and that the defendant Alford, the administrator, go hence without day, and the

administration on the estate of Earle Cravens, deceased, be sustained, and that this judgment be certified to the county court of Dallas county, sitting in probate, with instructions to proceed in the matter of said administration. The proof tended to show that on January 24, 1892, the established and existing indebtedness against the estate of Earle Cravens amounted to $3,660.83; that on February 27, 1893, the county court of Dallas county ordered a sale of the land in controversy for the payment of the indebtedness against the estate, under which order the land was sold by the administrator, and bought by R. D. Bowen, plaintiff, the sale reported to the court, and duly approved and confirmed, and the administrator was ordered to make a deed therefor to plaintiff, which deed was made as ordered, bearing date November 13, 1893, and was duly recorded in the county where the land is situated. On January 18, 1884, Mary P. Fortson, as sole heir of Earle Cravens, sold and conveyed the land in controversy to C. H. Cooper. The next day he conveyed the land to J. M. Clymer, one of the defendants, under whom the other defendants claim through proper deeds. Clymer testified that he had all of his negotiations for the purchase of the land with George F. Alford; that they had considerable negotiation about the purchase of it; and that the price and terms were agreed on between him and Alford, and when the deeds of Mrs. Fortson to Cooper, and from Cooper to Clymer, were handed to him by Alford, Clymer objected, stating to Alford that he had bought the land from him, and wanted a deed from him. Whereupon Alford said that Cooper was his partner, and that a deed from Cooper was the same as a deed from Alford; and, under these circumstances, relying on these statements, he accepted the deed, supposing that he was getting a good title to the land. He paid the purchase money to Alford. He had possession of the land before he bought it, but did not claim it until then, after which he continued in possession, claiming it as his own. There was proof as to the continued possession of the premises, and the payment of taxes on the land, but the view we have taken of the case makes any further reference thereto unnecessary.

There is no appearance for defendants in error in this court. We have not the benefit of either oral argument or brief on their behalf. There is no suggestion in the record of the ground on which the trial judge based his charge directing a verdict for the defendants. The counsel for plaintiff in error suggest that the only ground on which the charge of the court can be held to be correct is that the defendants had acquired title by the statute of limitations. It is certainly too late for the heir or those claiming under her to contest the validity of the administration. Waiving any question as to the proper forum for such matter, there is no suggestion in the record of any collusion between the purchaser at the administrator's sale and Alford, or any ground to charge the purchaser with the equities, if any, growing out of the dealings of Alford and Cooper with Clymer, in 1884. The indebtedness of the deceased was a charge upon her estate as clearly as the lien of an attachment upon her property in her lifetime would have raised. The estate vested in the heir, subject to administration. The heir herself did not claim against the

estate, but through it. It is not suggested that the purchaser from her did not know her relations to the estate, but, on the contrary, it is shown that she sold and conveyed in her character as sole heir. We therefore concur with the suggestion of counsel for the plaintiff in error that the only ground upon which the charge of the court can be held to be correct is that the defendants acquired title by the statute of limitation. Plaintiff in error contends that these purchasers from the heir, pending the litigation between the heir and the administrator, over the grant of the administration itself, are chargeable as lis pendens purchasers. On this point there is a dearth of direct authorities. It is not a question of whether limitation will run against the estate in the course of administration,—for, subject to certain qualifications, not necessary to be mentioned, it is too well settled that the right of an estate may be lost by limitation,—but the question is: Can the heir, while holding only as such, keep possession of the property, and during the whole time litigate with the administrator over the validity of the administration, until, by the lapse of three or five years' time, her possession shall ripen into a title by prescription; and, if she cannot do this by holding possession herself, can she effect it by a sale to another, who has knowledge of her relation to the estate, and his subsequent possession, pending her litigation with the administrator, of three or five years? It seems clear to us that these questions must be answered in the negative, and that a purchaser from her is so charged with notice of the pending litigation, and notice of its character, as to debar him from claiming that his possession is peaceable, if adverse. As said above, direct authorities have not been presented by plaintiff's counsel or found by us. The cases of Harle v. Langdon's Heirs, 60 Tex. 555, and Paxton v. Meyer, 67 Tex. 96. 2 S. W. 817, present closer analogies than any we have examined; but our conclusion is based rather upon elementary principles, deduced, it is true, from adjudged cases, but too well settled to require citation.

It follows that the judgment of the circuit court must be reversed, and the cause is remanded to that court, with instructions to award the plaintiff a new trial.