# FIRST DISTRICT, 1901.

GEORGE CORDRAY ET AL. v. C. L. NEUHAUS.

Decided February 1, 1901.

**1.—Jurisdiction of District Court—Tax Suits—Presumptions—Collateral Attack.**

Where a special and limited authority has been prescribed for a court of general jurisdiction, as in enforcing a sale of land for taxes, nothing is taken by intendment in favor of its action, even in a collateral attack on its judgment, but it must appear by the recitals of the record itself that the facts existed which authorized the court to act, and that it acted within the limits of its authority.

**2.—Same—Galveston City Charter.**

The Galveston city charter of 1871 and ordinances thereunder had the effect of rendering the jurisdiction of the District Court of Galveston County in the sale of lands for taxes a special and limited one.

**3.—Same—Void Judicial Sale for Taxes.**

A sale of land for city taxes, made to the city under decree of the District Court of Galveston County foreclosing the tax lien, conferred no title where the amount of such taxes was less than $100, and the city charter and ordinances were not complied with in that notice of the sale was given for only twenty-two instead of thirty days, and that no confirmation of the sale was ever had.

**4.—Purchaser at Judicial Sale—Effect of Reversal of Judgment.**

Where the plaintiff purchases land under his own foreclosure proceedings, and conveys it to a purchaser for value, a subsequent reversal of the judgment upon writ of error sued out by the defendant therein, operates to extinguish the title of such second purchaser.

**5.—Judgment by Confession—Power of Attorney—Estoppel.**

Where a landowner empowered her attorney to confess judgment for a given amount of lien debt, and he confessed judgment for a much larger amount, the letter of attorney being copied into the judgment entry, the owner of the land

was not estopped from asserting her right to have set aside a foreclosure sale of the land made under the judgment which thus showed on its face to be unwarranted.

Appeal from Galveston. Tried below before Hon. Wm. H. Stewart.

*L. E. Trezevant,* for appellants.

*Kleburg & Neethe,* for appellees.

GARRETT, CHIEF JUSTICE.—This action was brought by the plaintiffs in error against the defendants in error for the removal of cloud from the title of plaintiffs to lot No. 9, block 21, in the city of Galveston, and for partition between themselves. It was averred in the petition that the defendants were asserting a claim of ownership and title to the lot which was a cloud upon the title of plaintiffs. The defendants pleaded their title specially, and plaintiffs raised the questions presented on the trial and in this court by demurrers to the answer, and motion for a new trial. The demurrers were overruled by the court, and upon a hearing of the facts, the court, sitting without a jury, rendered judgment in favor of the defendants.

Kate Cordray is common source of title, and the plaintiffs, except Jonas Grosmayer, are her heirs, and claim an undivided one-half of the lot. Grosmayer claims the other half by mesne conveyances from her. As alleged in the answer and shown by the facts, Kate Cordray was the wife of T. J. (Julius) Cordray. The lot in controversy was her separate property. She died October 21, 1896. On May 22, 1876, the city of Galveston brought a suit in the District Court of Galveston County, No. 8903, against Mrs. Kate Cordray for the recovery of $16 and interest, alleged to have been levied and assessed as city taxes for the year 1875 on lots 8 and 9, block 21, and for the sum of $17 and interest, aleged to have been levied and assessed as city taxes for the yesar 1875 on lot No. 9, block No. 612, the property of Mrs. Kate Cordray. Mrs. Cordray's husband was not made a party to the suit. On July 19, 1876, a judgment was rendered in said suit in favor of the city of Galveston against Mrs. Cordray for the gross sum of $36.46, with 8 per cent interest, which was adjudged to be a lien upon lots 8 and 9, block 21, and lot 9, block 612, and the same were ordered to be sold as under execution for said sum with interest and costs of suit. On the 6th day of June, 1877, an order of sale was issued on said judgment by the clerk of the District Court of Galveston County, directed to the sheriff of said county, commanding him to sell said property as under execution for the satisfaction of the said sum of $36.46, with interest thereon at the rate of 8 per cent per annum from July 19, 1876, and the sum of $9.45 costs of suit, and the further costs of executing the writ. The sheriff received the writ on the 8th day of June, 1877, and on the 12th day of June, 1877, advertised said property for sale on the first Tuesday, the 3d day

of July, 1877, by causing an advertisement thereof to be posted up in three public places in the county of Galveston, one of which was at the door of the courthouse of said county; and on the 3d day of July, 1877, being the first Tuesday in. said month, the sheriff sold said property at public vendue in front of the courthouse door, and the city of Galveston having bid therefor the sum of $57.81, a sum sufficient to satisfy the judgment, and that being the highest and best bid for the same, it was struck off and sold to the city of Galveston for said amount. The writ was returned satisfied. It does not appear that any deed was ever executed. [But see corrected conclusions at end of the opinion.] It was shown by the evidence that lot 9, block 612, was the homestead of the defendant Kate Cordray and her husband, J. T. Cordray.

On May 27, 1880, the city of Galveston brought a suit in the District Court of Galveston County, No. 10,201, against Kate Cordray and her husband, Julius Cordray, to recover the sum of $1687.92 as the amount expended by the city in filling lots 8 and 9, block 21, in the city of Galveston, alleged to be the property of Mrs. Kate Cordray, for which the city claimed a lien under its charter and ordinances. In this suit a judgment was rendered on August 15, 1880, in favor of the city for the sum of $2936.98, with foreclosure of lien upon lot 9 in block 21, by confession of their attorney under a power to confess judgment for the amount expended by the city, with a decree that lot 9 only should be sold. In pursuance of said judgment, lot 9, block 21, the property in controversy; was duly sold on October 15, 1880, and the city of Galveston became the purchaser thereof for the sum of $600, and the sheriff executed to the city a deed therefor.

On January 13, 1882, Henry Sayles recovered judgment against the city of Galveston in the District Court of Galveston County for the sum of $2937.85, and by virtue of an execution regularly issued upon said judgment the property in controversy was levied upon and sold on March 7, 1882, and one Edward Garratt became the purchaser thereof for the sum of $285, and a deed was executed to him therefor by the sheriff, and from Edward Garratt the said property passed by mesne conveyances to the defendants, whose deed from one J. C. Kirschner is dated October 18, 1890, and is a general warranty deed for a consideration of $2000. The respective purchasers paid full value for the property at the time of their purchases.

On June 30, 1893, Kate Cordray, joined by her husband, sued out a writ of error from the judgment rendered against her in cause No. 10,201, and on April 15, 1894, said judgment was reversed by this court and the cause remanded to the District Court of Galveston County for another trial. 26 S. W. Rep., 245. On July 6, 1899, after said cause had been reinstated on the docket of the District Court and continued for several terms, the city of Galveston by its attorney dismissed the same, and disclaimed all title to the said lot 9, block 21. The property in controversy is and always has been a vacant lot, and has not been in the possession of any person other that Kate Cordray and her husband

until February 10, 1897, when the defendants took and remained in possession thereof until dispossessed by the sheriff of Galveston County by virtue of a writ of possession issued in cause No. 10,201 upon its dismissal by the city. No taxes were ever paid on the lot No. 9, block 21, by Kate Cordray or anyone for her or her heirs after the rendition of the judgment in favor of the city in cause No. 10,201; but all taxes upon said lot have subsequently been paid thereon by the said Garratt and those holding under him, the defendants having paid all taxes accruing since their purchase. Neither the defendants nor any of the purchasers of said property under said execution sale against the said Kate Cordray had any knowledge that said Kate Cordray or her heirs or assigns were dissatisfied with the judgment in said cause No. 10,201, and were without any personal or actual knowledge at the time of their respective purchases, or at any time, that Kate Cordray was a married woman, or that she intended to appeal said cause by writ of error, but the petition and judgment disclosed the fact that she was a married woman, and the authority to confess judgment for only the amount expended was set out in the judgment.

Upon the trial below plaintiff put in evidence an ordinance of the city of Galveston which was in force at the time that the tax suit No. 8903 was instituted, and, so far as it is relevant or pertinent to the issues in this case, is as follows:

"Section 14 of article 1 of chapter 39 of the Revised Ordinances of the City of Galveston of the Year 1871:

"Section 1. That in all cases where any tax shall be or may hereafter become due upon any property, the city may, in addition to the remedies hereinbefore provided, institute suit in the District Court of Galveston County for the recovery of the same, and may in the same suit pray a foreclosure of the lien upon such property, accruing by reason of the assessment of such tax. The petitions in any such suit shall state the property proceeded against and the tax due on the same as near as may be, and also the rate of interest due on said tax, as prescribed by city ordinance; and the gross amount of taxes claimed in any such petition must be one hundred dollars or over. In rendering judgment, each piece or parcel of land shall be condemned separately as near as may be, save that several lots in the same block may be condemned together; and it shall be the duty of the sheriff of the county of Galveston, at any time after such condemnation by the court to make sale of the same in the manner prescribed in the city charter, and subject to the redemption therein specified."

If either one of the two execution sales relied on by the defendants were valid, the plaintiffs were not entitled to recover. When there is no actual prohibition either in the Constitution or the statute, an action of debt lies for the collection of taxes, and the lien therefor may be foreclosed in the district courts of this State. Cave v. City of Houston, 65 Texas, 619; City of Henrietta v. Eustis, 87 Texas, 16. If the district court, in the exercise of its general jurisdiction, can entertain a

suit for the recovery of taxes and the foreclosure of a lien therefor, its judgment is conclusive of the regularity of the legal requirements in the levy and assessment of the tax; and a foreclosure sale for the satisfaction of the judgment should be made in the usual manner of such sales generally, and would not be held invalid for irregularities in a collateral attack such as has been made in this case. Unless the District Court of Galveston County could only exercise a special jurisdiction when it foreclosed the tax lien in cause No. 8903 and had the property of Kate Cordray sold, it seems that the sale under the judgment in that case was valid, and that title was vested in the city by its purchase thereat. It does not appear that a deed was executed to the city by the sheriff, but this was not necessary. The title of the purchaser of land at a sheriff's sale does not depend upon the deed. It rests upon a valid judgment, levy and execution sale, and the payment of the money. Donnebaum v. Tinsley, 54 Texas, 365; Flanneken v. Neal, 67 Texas, 631. But a special and limited jurisdiction may be prescribed for a court of general jurisdiction in the sale of land for taxes, and when this has been done, nothing is taken by intendment in favor of the action of the court; it must appear by the recitals of the record itself that the facts existed which authorized the court to act, and that in acting the court has kept within the limits of its lawful authority. Cooley on Tax., 525, 526. By the Constitution of 1869 (article 12, sections 20, 21) the annual assessment of taxes on land was made a lien thereon, but no landed property could be sold for the taxes due thereon except under a decree of some court of competent jurisdiction. In pursuance of these provisions of the Constitution the Twelfth Legislature, in granting a charter to the city of Galveston by a special law approved May 16, 1871, provided that all taxes should be a lien upon the property upon which they were assessed, and for a proceeding in the District Court of Galveston County for the sale of real estate. Charter of Galveston, tit. 6, arts. 10, 14 (Spec. Laws 12th Leg., 1st Sess., pp. 370, 371); 6 Gammel's Laws, 1509. Article 14, which provides for the sale of real estate, read as follows:

"Section 1. That the foregoing provisions under head of title 6, relating to notices, assessments, and collection of taxes on personal property, and all other provisions thereof not inconsistent with this section, shall also apply to real estate, but that no sales of real estate shall take place unless by decree of the District Court of Galveston County, at some regular term thereof; and the city council may by ordinance enact the mode and manner in which such suits for collection of taxes due and unpaid on land shall be instituted, and may have such other and further power regulating the proceedings necessary for the sale of lands as it thinks best and is not inconsistent with the laws and Constitution of this State, provided, that no sale shall be made until the owner has thirty days' notice thereof, which notice may be given actually by any officer of this city, or by advertisement for sixty days, which advertisement may merely so describe the property, as to designate it, and it shall not be necessary to set out the owner's name, unless the same is

known; and further provided, that such owner, his agent or attorney, may redeem said property within two years from the day of sale, by paying the purchaser or purchasers the full amount of his bid and costs of suit, with interest thereon at the rate of 12 per cent per annum from day of sale; and further provided, the purchaser or purchasers may apply to the district court at any time after said expiration of two years for confirmation of sale, and which said decree of confirmation shall vest full and absolute title in the purchaser or purchasers of said property, their heirs or assigns; and said district court shall take and exercise all jurisdiction required to carry this into effect, and such ordinances as may be passed by the city council relative to the subject matter."

Article 1 of title 6 provides that the city council "may and shall make all such rules and regulations, and ordain and pass all ordinances as they may deem necessary to the levying, laying, imposing, assessing, and collecting of any of the taxes herein provided." P. 366. The suit was brought after the adoption of the Constitution of 1876, but there is nothing in that instrument inconsisitent with the charter and ordinances prescribing the mode of precedure for the sale of land for taxes. Other provisions of the charter contemplate a sale of land by the collector, but these are subordinate to the controlling requirement that it can only be sold by a decree of the district court. The charter and ordinances passed in pursuance thereof must be construed as prescribing the mode of procedure in the district court to have land sold for taxes. They prescribe a different rule for the sale from that followed under the general powers of the court, and confer only a special and limited jurisdiction on the court. Such being the case, it was necessary to a valid sale in the first place that the court should have had jurisdiction of the amount which was by the ordinance fixed at $100 or more, and after judgment that all the requisites prescribed for the sale should have been complied with; and the authorities relating to sales by the collector are applicable to the sale made by the sheriff under the decree of the court when it is exercising only limited and special jurisdiction.

There are quite a number of objections to the validity of the sale: (1) The amount of the taxes was less than $100; (2) the gross amount of taxes were adjudged to be a lien on the property in bulk and the property was sold in bulk, the homestead being included with the other property, and the manner of sale was not as prescribed by charter; (3) the notice required by law was not given; (4) no deed for the property was executed; and (5) no confirmation of the sale was ever had. It would seem from the facts that no deed was executed and that the city took no steps to have the sale confirmed, but sought to charge Kate Cordray and her husband personally and the property with a lien for filling it under the sanitary ordinances of the city,—that it had abandoned any claim under the tax suit. We are of the opinion that no title ever became vested in the city by reason of this tax sale.

At the time of the sale of the lot under the execution issued on the judgment of Henry Sayles v. City of Galveston, the city had obtained a

judgment against Kate Cordray and Julius Cordray for the sum of $2936.98 with foreclosure of a lien on the lot, without execution over, and the lot had been sold under the decree of foreclosure and bought by the city for the sum of $600. The city's judgment when it had the lot sold in satisfaction of its lien had not been appealed from and was unreversed and in full force, and it was not reversed until long after Garratt bought it at execution sale against the city, and until long after the defendants acquired their title. It is well settled that where there has been sale under execution of lands or goods and a stranger is the purchaser bona fide, his title will not be affected by a subsequent reversal of the judgment. Stroud v. Casey, 25 Texas, 754. The city purchased at its own sale, and if the title had remained in it at the time of the reversal of the judgment, there could be no question but that it would have become extinguished by the reversal. But was Garratt a stranger to the suit so that he would be protected in his purchase. "It is a rule nowhere disputed that third persons purchasing at a sale made under the authority of a judgment or decree, not suspended by any stay of proceedings, thereby acquire rights which no subsequent reversal of such judgment or decree can in any respect impair." 2 Freem. on Judg., sec. 484. There are some courts which hold that while the title of the plaintiff in execution would be annulled by a reversal of the judgment, a conveyance by him to a third person, purchased in good faith before reversal, would be protected. 2 Freem. on Judg., sec. 484, citing cases from Illinois and Missouri. Kentucky stands almost alone in holding that the title of the plaintiff in execution himself would not be affected by the reversal. Parker v. Anderson, 5 T. B. Mon., 455. See Freem. on Judg., supra. But it is believed that the rule is settled otherwise in this State, and that a purchaser from the plaintiff in execution who had bought at his own sale will not be protected. Harle v. Langdon's Heirs, 60 Texas, 564; Adams v. Odom, 74 Texas, 213. The assignee of the plaintiff is in no better attitude than the plaintiff himself. Dembitz, in his work on Land Titles, says: "The weight of opinion gives to a purchaser from the plaintiff no greater right to hold on to his purchase than he has himself; the estate gained by the plaintiff at a sale under an erroneous judgment being held in the light of a defeasible fee, which does not become absolute by being sold to a party ignorant of the defect." 2 Dembitz on Land Titles, p. 1229. See also other authorities cited by Dembitz and Freeman; 2 Black on Judg., sec. 955. It is not deemed necessary to analyze or discuss the cases decided by our Supreme Court. It is believed that they are directly in line with the rule as stated. The purchase by Garratt at execution sale against the city was just as though he had bought directly from the city. Ayres v. Duprey, 27 Texas, 606, citing Cooper v. Blakey, 10 Ga., 253. The title of the defendants fell with the reversal of the judgment.

It is urged that Kate Cordray is estopped by her confession of judgment from denying the validity of the sale; and in support of this contention counsel have cited Railway v. Blakeney, 73 Texas, 180; Stafford

v. Harris, 82 Texas, 178; Ryan v. Maxey, 43 Texas, 192; Cravens v. Booth, 8 Texas, 243. The letter of attorney given by Mrs. Cordray to her attorney to confess judgment was copied into the judgment entry, and showed by its terms that he had·no authority to confess judgment for more than the amount expended in filling the lots, but judgment was entered for nearly twice as much, and showed on its face that it was unauthorized and erroneous. Mrs. Cordray was certainly not estopped from asking to have it set aside. We are of the opinion that the judgment of the court below should be reversed, and that judgment should be here rendered in favor of the plaintiffs in error, and it is so ordered.

*Reversed and rendered.*

### CORRECTION OF CONCLUSIONS OF FACT.

GARRETT, CHIEF JUSTICE.—We were mistaken in saying that it did not appear that any deed was ever executed in the tax case No. 8903. On the contrary, the record does show that a deed was executed to the City of Galveston by the sheriff who made the sale, and the conclusions heretofore filed are corrected so as to show that fact.

Writ of error refused.