### R. L. SMITH ET AL. v. J. W. CAVITT.

Decided February 18, 1899.

**1. Evidence—Lost Instrument—Preliminary Proof of Loss.**

The testimony of a witness that he at one time had possession of the transfer of a land certificate and had lost or mislaid it, is sufficient to lay the foundation of secondary evidence of its contents, where there is nothing to show that anyone else came into possession of it, or that it might be found by inquiry from other sources.

**2. Same—Affidavit Not Necessary.**

A preliminary affidavit as to the loss of a written instrument is not necessary to render secondary evidence of its contents admissible, but the loss may be shown on the trial by a witness.

**3. Same—Ancient Instrument.**

The contents of an ancient instrument which is shown to have been lost, may be proved without further evidence of its execution.

**4. Same—Conclusions of Witness—Immaterial Error.**

Admission of the conclusion of a witness that a lost deed vested title in the grantee, is harmless error where its contents are sufficiently shown by other testimony.

APPEAL from Freestone. Tried below before Hon. L. B. COBB.

*Boyd, Compton & Anderson,* for appellants.

RAINEY, ASSOCIATE JUSTICE.—This is an action of trespass to try title brought by appellee to recover of appellants 320 acres of land of the John Miller survey situated in Freestone County.    Appellee recovered judgment from which this appeal is prosecuted.

*Conclusions of Fact.*—The plaintiff showed a regular chain of title to the land from the sovereignty of the soil by mesne conveyances down to himself.

One of the conveyances was the transfer of the original certificate by John Miller to Wm. M. Love.   It was shown by one Karner that said transfer was in writing but was lost; that it was made about the time of the survey of the 320 acres in controversy, which was in 1846.   The defendants offered evidence showing that they held the land by mesne conveyances from the sovereignty of the soil down to themselves.   One link in the chain of their title, to wit, deed of conveyance from John Miller to J. K. Williams, dated November 8, 1849, was attacked by plaintiff as a forgery, and the question of the forgery was submitted to the jury.   The John Miller survey was for 640 acres.   The 320 acres, the land in controversy, was located in a northern portion of the county, the abstract number being 454.   The other 320 acres was located in the southern portion of the county, and its abstract number was 453.

The plaintiff introduced the tax assessor's abstract of Freestone County showing rendition of taxes from 1880, which showed that plaintiff had at no time rendered the 320 acres as abstract number 454, but had rendered 320 acres in the name of John Miller, abstract No. 453, in Freestone County, at $3 per acre from 1885 to 1895, and at $5 per acre since. Said assessor's abstract showed that the 320 acres of abstract No. 454, which is the land in controversy, had been on the unrendered rolls from 1886 to 1893, and that prior to 1886 it had been rendered for taxes by L. D. Bradley and one King.   Defendants admit that the plaintiff had paid taxes on the land he had rendered.   It was shown that the survey in the southern part of the county was worth about $1 per acre for taxation, and the land in controversy about $5 per acre.   The land in controversy had been known for years as the Cavitt land.   Years ago J. P. Robinson rendered the land in controversy and paid taxes thereon for Cavitt.   Plaintiff was never in actual possession of the land in controversy.

*Opinion.*—The errors assigned by appellant relate to the rulings of the court on the admission of the testimony of one John Karner, who testified as to the existence and contents of the written transfer of the original certificate to Wm. M. Love by John Miller, the original grantee. And also to the action of the court on the question of the forgery of the deed from John Miller to J. K. Williams, one of the links in appellant's chain of title.

We deem it only necessary to discuss the issues raised on the admission of said Karner's testimony, for if the transfer of the certificate is

properly established, then plaintiff would be entitled to recover, and the action of the court on the question of forgery of the Williams deed becomes immaterial, if error, as plaintiff's title is prior to defendant's, and there are no equities shown entitling defendant to precedence.

John Karner testified by deposition, and his answers as to the loss and contents of the written transfer of the original certificate were objected to on the ground that no sufficient predicate had been made, which objection was overruled.

Karner testified in relation to the loss of said transfer as follows: "I knew Wm. M. Love since 1838 up to his death. In 1851 I married his niece. Love and I were more or less associated as partners in locating lands from 1838 till within a few years of his death. We kept our papers together, both individual and partnership; whichever was left at home was custodian of our papers. This instrument was in my possession with other valuable papers of Wm. M. Love at the time of his death, and when I got his papers together to turn over to Mrs. Love I kept this certificate out, as I was familiar with the fact that it had been deeded to two different parties, in two different tracts of 320 acres each, one of the parties being Josephus Cavitt, and the other party I do not remember, having been familiar with these different transactions. This certificate was in my possession up to about ten years ago, to my knowledge, and I thought it was still in my possession up to last year, but upon examination could not find it when I was called on for it by Ben Love. I have lost or mislaid it. Several years after Wm. M. Love's death I turned over to Mrs. Love, his widow, all the papers that were valuable to his estate. I did not keep any other paper of Love's except the one I testify about. Mrs. Love was living in Navarro County when I last heard of her, about a year ago. The reason I kept the transfer was because I knew Wm. M. Love had sold his interest; that he had sold Josephus Cavitt 320 acres, I being present when the sale was made, and the other 320 acres to some party whose name I can not remember."

Before secondary evidence of the contents of a lost instrument is admissible, it must be shown that diligent search has been made for the original. Mr. Greenleaf states the rule thus: "In general the party is expected to show that he has in good faith exhausted, in a reasonable degree, all the sources of information and means of discovery which the nature of the case would naturally suggest, and which were accessible to him. It should be recollected that the object of the proof is merely to establish a reasonable presumption of the loss of the instrument, and that this is a preliminary inquiry addressed to the discretion of the judge." 11 Greenl, on Ev., sec. 558. And further: "If it belonged to the custody of certain persons or is proved or may be presumed to have been in their possession, they must in general be called and sworn to account for it, if they are within reach of the process of the court." No difficulty arises as to the correct rule, but it is sometimes difficult in its application to particular facts. Each case is governed by the particular facts shown to exist. The evidence of Karner showed that he at one

time had possession of the transfer of the certificate and he had lost or mislaid it. There is nothing to show that anyone else came into possession thereof thereafter, nor does the evidence indicate that it might be found by inquiry from other sources. Waggoner v. Alvord, 81 Texas, 365. We are of opinion that under the circumstances of this case the loss was established and that the court did not abuse its discretion in admitting the evidence.

The fourth assignment of error complains of the court in admitting over objections the following evidence of said Karner, to wit: "It was a transfer of the John Miller 640 acres certificate to Wm. M. Love which vested title in Wm. M. Love." The objections urged were: "Because (1) no proper predicate had been laid by the plaintiff to admit such testimony, in this, that plaintiff had filed no affidavit of the loss of the instrument under which he claimed title; nor had the plaintiff proved by the witness Karner the execution and delivery of such instrument, its proper custody, or that diligent search had been made to find the original; and (2) because said answer was a conclusion only of the witness Karner."

As to the first objection, a preliminary affidavit as to loss is not absolutely necessary. The loss of an instrument can be shown on the trial by a witness on the stand, which is sufficient to authorize secondary evidence of its contents. Parks v. Caudle, 58 Texas, 216; Trimble v. Edwards, 84 Texas, 497. The transfer was shown to be an ancient instrument, and its existence having been shown, further proof of its execution was not necessary. We have above stated that the proof of loss was shown. The second objection is subject to the criticism urged, but as there was sufficient uncontradicted evidence to show the contents of the instrument, it becomes harmless and will not cause a reversal of the judgment.

It is assigned that the court erred in admitting in evidence, over objection, the deed to Josephus Cavitt from Love, because not properly acknowledged. The introduction of the deed was proper as an ancient instrument, and whether properly acknowledged or not is immaterial.

Judgment affirmed.

*Affirmed.*