## HILL & JAHNS v. LOFTON.

(Court of Civil Appeals of Texas. Amarillo. Feb. 7, 1914. Rehearing Denied March 21, 1914.)

1. EVIDENCE (§ 366*)—DEEDS—COPIES—PRELIMINARY EVIDENCE.

Under Sayles' Ann. Civ. St. 1897, art. 2312, requiring an affidavit as a predicate to the introduction of a certified copy of a recorded instrument to be filed with the papers of the case, evidence of a witness on a stand as to inability to produce the original deed was equivalent to such affidavit, and authorized the introduction of a certified copy.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1521–1539; Dec. Dig. § 366.*]

2. EVIDENCE (§ 383*) — DOCUMENTARY EVIDENCE—EFFECT—SURVIVORSHIP.

A verified petition for probate, setting out the fact of the death of the husband of testatrix prior to her decease, and the will itself, reciting that she was the widow of one R. S., together with a prior deed to her reciting that she was then the wife of R. S., was sufficient to show that her husband had predeceased her, so that she inherited his half interest in the community property.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1660–1677; Dec. Dig. § 383.*]

3. PROPERTY (§ 9*)—PRESUMPTIONS—CONTINUANCE OF FACT.

When a state of facts such as seisin of land is shown to exist, the presumption is that it continues to exist until the contrary is shown.

[Ed. Note.—For other cases, see Property, Dec. Dig. § 9.*]

4. EVIDENCE (§ 353*)—PEDIGREE AND RELATIONSHIP—STATEMENT IN DEED.

A statement in a deed such as that the grantor was a married woman was admissible for the purpose of identification, and to establish relationship, pedigree, etc.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1404–1428, 1430, 1431; Dec. Dig. § 353.*]

5. NAMES (§ 18*)—IDENTITY OF NAME—IDENTITY OF PERSON.

In the absence of evidence casting suspicion upon the identity of a party to a conveyance in a chain of title, a similar deed or identity of name is prima facie evidence of identity of persons.

[Ed. Note.—For other cases, see Names, Cent. Dig. §§ 4, 17; Dec. Dig. § 18.*]

6. JUDGMENT (§§ 486, 501*)—COLLATERAL ATTACK.

A judgment of a court of competent jurisdiction, though erroneous, must be given full effect until reversed, set aside, reformed, or otherwise annulled by proper proceedings, but, if a judgment is void, it may be collaterally attacked at any time and in any proceeding where it is urged in support of any right.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 919, 920–923, 941; Dec. Dig. §§ 486, 501.*]

7. JUDGMENT (§ 489*)—COLLATERAL ATTACK—GROUNDS—WANT OF JURISDICTION.

A judgment rendered by a court without legal organization or without jurisdiction of the subject-matter or jurisdiction of the person, or which has lost such jurisdiction, is absolutely void, even as to a bona fide purchaser for value, and may be collaterally attacked.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 924, 925; Dec. Dig. § 489.*]

8. JUDGMENT (§ 495*)—COLLATERAL ATTACK—PRESUMPTION IN FAVOR OF VALIDITY.

A presumption in favor of the judgment of a court of general jurisdiction acting within the ordinary scope of its powers and upon a subject-matter within its jurisdiction arises only in respect to jurisdictional facts, as to which the record is silent, and its regularity will not be presumed against a record disclosing the fact that the court exceeded its jurisdiction.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 549½, 933, 934; Dec. Dig. § 495.*]

9. TAXATION (§ 639*)—TAX SALE—VALIDITY—JURISDICTION.

Under the statute providing that suit for sale for taxes shall be filed in the name of the state in the district court of the county where the land is situated, a sale of land lying in a different county from that in which the suit was brought and to which the taxes were alleged to be due was void.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1302; Dec. Dig. § 639.*]

10. TAXATION (§ 668*)—TAX SALE—AMOUNT—STATUTES.

Under Rev. St. 1911, art. 7691, allowing the county attorney a fee of $3, the district clerk a fee of $1.50, and the county clerk a fee of $1 in a tax sale foreclosure, a sale under a judgment, including an excess of $14.71 for those items, was void.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1351; Dec. Dig. § 668.*]

11. TAXATION (§ 734*)—TAX SALE—DELINQUENCY.

Under the statutes governing sale of land for delinquent taxes, expressly excluding jurisdiction as to land already assessed and the taxes thereon paid in a county other than the one in which it is located, an execution sale, in S. county of land on which part of the taxes had been paid in H. county was a sale, in part, for an amount not delinquent, and void.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1408, 1470–1473; Dec. Dig. § 734.*]

12. COURTS (§ 33*)—TAX SALE—JURISDICTION TO BE SHOWN BY RECORD—SPECIAL NATURE OF PROCEEDING.

Proceedings in a district court to collect taxes by foreclosure sale depend solely upon the statute; its jurisdiction is limited and special, and nothing is taken by intendment in favor of court's action, but it must appear from the records that facts existed which authorized it to act, and that it kept within the limits of its jurisdiction.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 135, 136, 138; Dec. Dig. § 33.*]

13. TAXATION (§ 632*)—TAX SALE—UNKNOWN OWNER.

That the tax records of S. county showed taxes to have been paid for certain years by a certain person was sufficient to notify the county of the ownership thereof, and to bar an action against an unknown owner.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1289, 1290; Dec. Dig. § 632.*]

Error to District Court, Sherman County; D. B. Hill, Judge.

Action to quiet title by J. T. Lofton against George D. Jahns, E. L. Sharp, E. S. Hill, and others, in which defendants Hill, Sharp, and

another impleaded defendant Jahns and another as warrantors of their title. Judgment for plaintiff against the defendants, for Hill and another against Jahns and another, and for defendant Sharp against defendant Jahns, and Hill and Jahns bring error. Affirmed.

Goree & Turner, of Ft. Worth, and C. F. Rudolph, of Stratford, for plaintiffs in error. Wm. J. Berne, of Ft. Worth, for defendant in error.

HALL, J. The following statement of the nature and result of the suit is taken substantially from the brief of plaintiffs in error: This suit was brought by the defendant in error, J. T. Lofton, against plaintiffs in error, George D. Jahns, J. R. Middlebrook, E. L. Sharp, U. S. Jahns, E. S. Hill, C. F. Rudolph, B. F. Loomis, and Dr. E. Snow, in the form of an action of trespass to try title to 540 acres of land in Sherman county, Tex., described as "section 25, block 2, G. H. & H. Ry. Co., patented by the state of Texas to Fred P. James in 1875, by virtue of land script No. 32/403, issued to G. H. & H. Railway Company, and transferred to said Fred P. James."

The plaintiff's original petition was filed in the district court of Sherman county, Tex., on March 27, 1909, and was in the usual form of trespass to try title, and to recover rents; the action for rents being subsequently dismissed.

Defendants, except Dr. E. Snow, in due time filed pleas of not guilty. The defendants Loomis and Rudolph subsequently disclaimed any interest in the land. Defendants E. L. Sharp, U. S. Jahns, and E. S. Hill, by proper pleading, sought to recover damages against their codefendants George D. Jahns and J. R. Middlebrook, as warrantors of their title, in the event plaintiff should recover title and possession of said land.

For title plaintiff relied upon the following instruments; the admission of most of them being objected to by defendants as shown by errors hereinafter assigned:

(1) Certified copy of patent, dated March 16, 1875, from the state of Texas to Fred P. James.

(2) Certified copy of special warranty deed, dated March 19, 1879, from Fred P. James and wife, Julia L. James, to Helen Schell, recorded in Sherman county, Tex., on August 2, 1884.

(3) Certified copy of will of Helen Schell, admitted to probate by the surrogates' court of the county of New York, N. Y., on April 19, 1890; recorded in Sherman county, Tex., on February 21, 1908.

(4) Original copy of deed from Josephine V. Lincoln and husband, James M. Lincoln, to J. T. Lofton, dated January 8, 1908, recorded in Sherman county, Tex., February 3, 1908.

(5) Original deed of correction from Josephine V. Lincoln and husband, James M. Lin-

coln, to J. T. Lofton, dated February 14, 1908, and recorded in Sherman county, Tex., on February 20, 1908.

For title defendants relied upon the following:

(1) Certified copy of patent, dated March 16, 1875, from the state of Texas to Fred P. James.

(2) Certified copy of judgment of the district court of Sherman county, Tex., rendered on November 9, 1904, in cause No. 64, entitled, "The State of Texas v. Heirs of F. P. James and Unknown Owners," decreeing a foreclosure of the plaintiff's lien on the tract of land in suit, and ordering the same sold to satisfy delinquent state and county taxes.

(3) Proof of order of sale issued in said cause No. 64.

(4) Sheriff's deed by virtue of said judgment and order of sale dated January 3, 1905, recorded in Sherman county, Tex., on January 23, 1905, conveying said property to J. L. Fuqua.

(5) Certified copy of quitclaim deed from J. L. Fuqua to N. Celsor, dated October 16, 1905, recorded in Sherman county, Tex., on January 13, 1906.

(6) Certified copy of special warranty deed from N. Celsor to George D. Jahns, dated December 19, 1905, recorded in Sherman county, Tex., on January 13, 1906.

(7) Certified copy of general warranty deed from George D. Jahns and wife, Nettie V. Jahns, dated June 11, 1906, recorded in Sherman county, Tex., on June 12, 1906.

(8) Certified copy of release of vendor's lien by which George D. Jahns releases all the purchase-money notes executed to him by J. R. Middlebrook, in payment for land in suit, dated March 21, 1908, recorded in Sherman county, Tex., on March 23, 1908.

(9) Certified copy, as well as original, of a general warranty deed from J. R. Middlebrook and wife, Laura Middlebrook, to U. S. Jahns and E. S. Hill, dated August 14, 1907, conveying an undivided one-half interest in the land in suit.

(10) Certified copy of a warranty deed from J. R. Middlebrook to E. L. Sharp, dated April 9, 1907, recorded in Sherman county, Tex., on February 22, 1908, conveying an undivided one-half interest in the land in suit.

(11) Certified copy of partition deed between E. L. Sharp and E. S. Hill and U. S. Jahns, recorded in Sherman county, Tex., on June 22, 1908.

(12) Certified copy of a judgment of the district court of Hansford county, Tex., rendered on the 18th day of June, 1901, in cause No. 17, entitled, "State of Texas v. Unknown Owners," foreclosing a tax lien on the land in suit, and ordering same sold to satisfy delinquent taxes.

(13) Order of sale issued in said cause No. 17, ordering said land sold to satisfy said taxes.

(14) Tax deed by virtue of judgment and order of sale in cause No. 17, executed by

Bert O. Cator, sheriff of Hansford county, Tex., on September 10, 1901, to N. Celsor, and recorded in Sherman county, Tex., on September 11, 1901.

The cause was tried to a jury, and, after all the evidence was introduced, the court instructed the jury to return a verdict for plaintiff against each of the defendants for the recovery of title and possession of the land, and for costs of suit; and to return a verdict in favor of E. S. Hill and U. S. Jahns against their codefendants George D. Jahns and J. R. Middlebrook, for breach of warranty in the sum of $2,288, and for taxes in the sum of $32.85, aggregating a total sum of $2,320.85, and interest thereon from the date of the judgment at 6 per cent. per annum, and for costs, and in favor of defendant E. L. Sharp against George D. Jahns for a like amount, which was accordingly done, and judgment rendered in accordance therewith on July 10, 1912.

[1] By their first assignment, plaintiffs in error insist that the court erred in admitting in evidence the certified copy of the deed from James and wife to Helen Schell, over the objection made by the defendants that plaintiff had not filed the affidavit or oath, as required by law, of his inability to produce and file with the papers of said cause the original of said instrument. It is asserted under this assignment that a certified copy of a recorded deed is inadmissible in evidence, in the absence of an affidavit by the party desiring to introduce it, filed among the papers of the cause in which it is to be offered as evidence, stating that the original of such recorded instrument has been lost, or that he cannot procure it, and it is urged that the language of article 2312, Sayles' Ann. Civ. St., would indicate that the affidavit required as a predicate to the introduction of a certified copy of a recorded instrument must be in writing, because the statute in express terms says that it shall be filed among the papers of the case. The reverse of this proposition has been held several times in this state, and it seems to be now well settled that the evidence of a witness on the stand as to inability to produce the original deed is equivalent to the statutory affidavit, and is sufficient to authorize the introduction of a certified copy. Trimble v. Edwards, 84 Tex. 497, 19 S. W. 772; Parks v. Caudle, 58 Tex. 216; Dohoney v. Womack, 1 Tex. Civ. App. 354, 19 S. W. 883, 20 S. W. 950; Baldwin v. Goldfrank, 88 Tex. 249, 31 S. W. 1064; Smith v. Cavitt, 20 Tex. Civ. App. 558, 50 S. W. 167.

The question of the sufficiency of the oral evidence introduced in this case as a predicate for the introduction of the certified copy is not a question under this assignment, and will not be considered.

By the second assignment of error it is insisted that the court erred in admitting a certified copy of the will and probate thereof Helen Schell from the surrogate's court of the county of New York, over the objections of the defendants that there was no predicate for the introduction of said instrument, in this: That the preceding link in plaintiff's chain of title, to wit, a deed from Fred P. James and wife to Helen Schell, showed that at the time of said conveyance Helen Schell was a married woman, and there was nothing in said deed, nor in any of the evidence offered by plaintiff, to show that said property was the separate property of said Helen Schell, nor that she died seised of the same, and therefore no right was shown in her to dispose of it by will. The propositions following said assignment are, in substance, that a recital in a deed that the grantee is the wife of a certain named person is prima facie evidence against one claiming under said deed that, at the time of its execution, the grantee was a married woman, and puts the title to the property prima facie in the community estate, throwing the burden of showing facts which give the premises the character of separate property of the devisor upon the party claiming under the will; and, further, that a married woman can only dispose of one-half interest in community property by will. The trouble with this assignment is that it does not faithfully reflect the facts of the record.

[2] The petition to probate the will, verified by J. M. Lincoln, one of the executors, sets out the fact of the death of the husband of Helen Schell prior to her decease. The will itself shows that J. M. Lincoln was the nephew by marriage of Helen Schell, and recites that she was the widow of Richard Schell. The deed from James to Helen Schell recites that she was then the wife of Richard Schell. This testimony was all introduced without objection, and was sufficient to show that the husband of Helen Schell was dead at the time of her decease, and therefore she inherited his half interest in the community property.

Plaintiff in error's third assignment is based upon the ground that plaintiff in the court below failed to show a regular chain of title from the state to himself in this: That the only link in plaintiff's chain of title, taking the title to the property out of Helen Schell and vesting it in Josephine Lincoln, was the will of Helen Schell, and that there is no evidence that the Josephine Lincoln mentioned in said will was the same Josephine Lincoln who conveyed the property to plaintiff by deed which constitutes one link in plaintiff's chain of title.

[3] It is insisted, among other things, under this assignment, that there is no evidence that Helen Schell died seised of the land in question. When a state of facts is shown to exist, the presumption is that it continues to exist until it is shown by evidence to the contrary. Holt v. Abby, 141 S. W. 173; Harle v. Richards, 78 Tex. 80, 14

S. W. 257; 1 Wig. Ev. § 382; 16 Cyc. 1054, note 33; 22 A. & E. Enc. of Law (2d Ed.) 1242.

[4, 5] It is further insisted under this assignment that there is no evidence that the Josephine V. Lincoln, legatee in the will, was the identical person who conveyed to Lofton. The will shows Josephine V. Lincoln to be the wife of James Minor Lincoln, and the deeds to Lofton are executed by Josephine V. Lincoln, joined by her husband, James M. Lincoln. The application to probate the will and both of her deeds to Lofton show her residence to be the same. Her second deed to Lofton recites her relationship to be the same as the statement thereof in Helen Schell's will and in the application to probate the will. The statement in the deed is admissible for the purpose of identification, and to establish relationship, pedigree, etc. Auerbach v. Wylie, 84 Tex. 615, 19 S. W. 856, 20 S. W. 776.

In Robertson v. Du Bose, 76 Tex. 1, 13 S. W. 300, the court said: "In the case of Chamblee v. Tarbox, 27 Tex. 144 [84 Am. Dec. 614], this court said that similarity of name alone 'is ordinarily sufficient evidence of identity of a purchaser in a chain of conveyance.' In the absence of evidence casting doubt upon the identity of a party to a conveyance of land, we think it ought to be held sufficient in every case, and the jury, if instructed upon the subject at all, ought to be told so." In the instant case, no evidence was introduced casting suspicion upon the identity of Josephine V. Lincoln. "In tracing titles, identity of names is prima facie evidence of identity of persons." Smith v. Gillum, 80 Tex. 120, 15 S. W. 794; Rupert v. Penner, 35 Neb. 587, 53 N. W. 598, 17 L. R. A. 824; Stebbins v. Duncan, 108 U. S. 32, 2 Sup. Ct. 313, 27 L. Ed. 641. The plaintiff, Lofton, testified in this case that Josephine V. Lincoln, his grantor, was the adopted daughter of Helen Schell, and this evidence is uncontroverted.

[6] As links in their chain of title, plaintiffs in error offered in evidence two judgments foreclosing lien for taxes upon the land in question, one rendered in Hansford county for taxes due for 1892, 1893, 1894, and 1896, and one rendered in Sherman county for $247.91 for taxes on the section of land in question and 11 other sections belonging to other parties. The validity of both of these judgments is attacked by defendant in error upon numerous grounds. According to Crawford v. McDonald, 88 Tex. 626, 33 S. W. 325, the objections made by defendant in error to these judgments is a collateral attack upon them. The general rule is that, although the judgment of a court of competent jurisdiction may be erroneous, it must be given full force and effect until it has been reversed, set aside, reformed, or otherwise annulled by proper proceedings instituted for that purpose; yet, if a judgment be

void, it is a nullity, without binding force either in the court which rendered it or in any other jurisdiction where it may be questioned, and it may be collaterally attacked at any time and in any proceeding where it is urged in support of any right. Heath v. Layne, 62 Tex. 686; Moore v. Perry, 56 S. W. 120; Ferguson v. Templeton, 32 S. W. 148; Lutcher v. Allen, 43 Tex. Civ. App. 102, 95 S. W. 572.

[7] In order to make a judgment subject to collateral attack: (1) It must have been rendered by a court without legal organization; or (2) by a court without jurisdiction of the subject-matter; or (3) jurisdiction over the person against whom it was rendered; or (4) one or more of these matters must have been lost after they once existed. If either of these defects can be shown the judgment, all rights conferred thereby are absolutely void, even in the hands of a bona fide purchaser for value. Newman v. Mackey, 37 Tex. Civ. App. 85, 83 S. W. 31.

[8] It is further said that, although every presumption, when not contradicted by the recitals in the record itself, will be indulged in favor of the judgment of a court of general jurisdiction, when acting within the ordinary scope of its powers and proceedings over a subject-matter within its jurisdiction, yet this presumption arises only in respect to jurisdictional facts of which the record is silent. The regularity of the judgment of courts will not be presumed against the record; that is, if the record discloses the fact that the court, in the exercise of its jurisdiction over the subject-matter, has transcended the limits prescribed then the presumption is rebelled. McMaster v. Childress, 10 Tex. Civ. App. 92, 30 S. W. 843; Treadway v. Eastburn, 57 Tex. 209; McNally v. Haynes, 59 Tex. 583.

[9, 10] The first objection made to the judgment rendered in Hansford county is that no taxes were due Hansford county for the years 1892, 1893, 1894, and 1896, for which taxes said judgment was rendered, and under which judgment the land was sold. The petition alleged the cause of action to be a failure to pay the taxes due the state of Texas and county of Hansford for said years, and judgment was rendered for such taxes. It appears from the record that in January, 1898, Twichell, a surveyor duly authorized to run the line between Hansford and Sherman counties, filed in the general land office his report and field notes, which were examined and approved by the land commissioner July 21, 1898, and which demonstrated that section 25, the land in question, was wholly in Sherman county. There is other testimony in the record which shows that a correct location of the county line between Sherman and Hansford counties places section 25 within the former county. It is provided by the act under which the judgment under discussion was rendered that:

"Suit shall be filed in the name of the state of Texas in the district court of the county where the land is situated." There was therefore no law under which a suit for taxes due upon land lying wholly in one county could be instituted in another. Another objection is urged upon the grounds that the land was sold to pay court costs in an amount greater than was authorized by the special act. The bill of costs attached to the order of sale shows that the following items of costs were included: "Issuing orders of sale and return, $1.50; attorney's fees, $12.15; sheriff's fees, $5.56; clerk's fees, $2.50." The sheriff's deed recites that he sold the land for the amount of the judgment and the sum of $5.14 interest thereon at the rate of 6 per cent. per annum from the date of the judgment, and the further sum of $20.21 costs. According to article 7691, R. S. 1911, the county attorney was entitled to recover a fee of only $3 and the district clerk a fee of $1.50, and the county clerk a fee of $1. It seems to be well settled in this state that a sale of land under tax foreclosure for a greater amount than the law allows and for costs exceeding the legal fees is void. Eustis v. City of Henrietta, 91 Tex. 325, 43 S. W. 259. In this case the excess in costs amounted to $2.21. Lufkin v. City of Galveston, 73 Tex. 340, 11 S. W. 340. In this case the excess was only 70 cents. In May v. Jackson, 73 S. W. 988, the excess item was $2.50, and in each of these cases the judgment was declared to be void.

It is further urged that the sale of Sherman county land under the Hansford county judgment was void, because the same was made in Hansford county. This fact appears from the order of sale, which is a part of the record, and has the effect of avoiding the sale. Casseday v. Norris, 49 Tex. 613; Moody's Heirs v. Moeller, 72 Tex. 635, 10 S. W. 727, 13 Am. St. Rep. 839.

The Sherman county judgment is attacked, first, because 12 sections of land were involved in that suit, and these sections did not belong to the same person; yet the judgment decreed that the entire number be sold to pay a lump sum and finally only a part of the lands were sold. It appears that the proceeds of the sale of a part of the sections paid the taxes on all of the lands, resulting in the sale of section 25, the land in question, to pay taxes upon lands belonging to other parties. In order to consider this objection, it would be necessary for us to consider matters de hors the record, as the question of the ownership of the land does not appear from the record pertaining to Sherman county judgment.

[11] It is further urged that no title passed by the execution sale in Sherman county, because the judgment was rendered and the sale made to pay the 1901 and 1902 state and county taxes, and the taxes for these years had been paid by Celsor in Hansford county. In Mote v. Thompson, 156 S. W. 1105 (writ of error denied by the Supreme Court), we held that the right to file suit for the collection of delinquent taxes and to foreclose a lien upon the property subject to the taxes, which exist solely by reason of this special statute, confers jurisdiction upon the district court, and without the statute the district court would have no such jurisdiction. By express provisions there is removed from the jurisdiction of the court: "(1) All real estate which may have been rendered for taxes and paid under erroneous description given in assessment rolls; (2) lands that may have been doubly assessed and taxes paid on one assessment; (3) lands which may have been assessed and taxes paid thereon in a county other than the one in which they are located." The purpose of this statute being to collect delinquent taxes, the court clearly had no authority to render a judgment for taxes already paid. This property had been rendered in 1901 and in 1902 by M. Celsor, and evidence was introduced showing the payment of the taxes in Hansford county for said years. The judgment was therefore rendered in part for an amount not delinquent. Mangum v. Kenley, 145 S. W. 316.

[12] We think the Sherman county judgment is further avoided because, in addition to the taxes due Sherman county, the judgment was for more than could have been legally collected. It is said in Lufkin v. City of Galveston, supra: "The principle is well established that, if a portion of the taxes for which the property is sold is illegal, the sale will be a nullity. The proceedings of a district court to collect delinquent taxes depends solely upon the statute and its jurisdiction in this particular is limited and special." Cordray v. Neuhaus, 25 Tex. Civ. App. 247, 61 S. W. 415, writ of error denied 94 Tex. 690, 61 S. W. 415; Mote v. Thompson, supra; Hollywood v. Wellhausen, 28 Tex. Civ. App. 541, 68 S. W. 329; Unknown Owner v. State, 55 Tex. Civ. App. 300, 118 S. W. 803. In the last-named case it is said: "The objections urged to the citation in the first assignment are not maintainable. This was a special proceeding under the delinquent tax law of 1897, which prescribed the form of citation to be issued in cases of this character, and the citation in the record substantially conforms therewith."

In State v. Unknown Owner, 47 Tex. Civ. App. 188, 103 S. W. 1116, it is held that the special law, rather than the general law, controls in this proceeding. This record shows that the sale under the Sherman county judgment was made to pay excessive fees charged for the benefit of the county attorney, as well as excessive fees for the clerk and sheriff.

In Cordray v. Neuhaus, supra, Garrett, J., said: "If the district court, in the exercise of its general jurisdiction, can entertain a

suit for the recovery of taxes, and the foreclosure of a lien therefor, its judgment is conclusive of the regularity of the legal requirements in the levy and assessment of the tax; and a foreclosure sale for the satisfaction of the judgment should be made in the usual manner of such sales generally, and not be held invalid for irregularities in collateral attack such as has been made in this case. Unless the district court of Galveston county could only exercise a special jurisdiction when it foreclosed the tax lien in cause No. 8903, and had the property of Kate Cordray sold, it seems that the sale under the judgment in that case was valid, and that the title was vested in the city by its purchase thereat. * * * The title of the purchaser of land at a sheriff's sale does not depend upon the deed. It rests upon a valid judgment, levy, and execution sale, and the payment of the money. * * * But a special and limited jurisdiction may be prescribed for a court of general jurisdiction in the sale of land for taxes, and, when this has been done, nothing is taken by intendment in favor of the action of the court. It must appear by the recitals of the record itself that the facts existed which authorized the court to act, and that, in acting, the court has kept within the limits of its lawful authority. Cooley, Tax'n, 525, 526. By the Constitution of 1868 (article 12, §§ 20, 21) the annual assessment of taxes on land were made a lien thereon, but no landed property could be sold for the taxes due thereon, except under a decree of some court of competent jurisdiction. In pursuance of these provisions of the Constitution, the twelfth Legislature, in granting a charter to the city of Galveston by special law approved May 16, 1871, provided that all taxes should be a lien upon the property upon which they were assessed, and for a proceeding in the district court of Galveston county for the sale of real estate." In this case it clearly appears that the district court of Hansford county had no jurisdiction, since the land was in Sherman county; that the district court of Sherman county rendered a judgment for taxes which had been paid in Hansford county upon land lying in Sherman county; and it further appears that both judgments were rendered for amounts in excess of sums legally due. These matters, not being contrary to the records, take the judgments out of the operation of the general rule. As was said by Neill, J., in Young v. Jackson, 50 Tex. Civ. App. 851, 110 S. W. 74: "A suit to foreclose a lien for delinquent taxes on property of an unknown owner is a proceeding in rem, not strictly judicial, but only a step in administration proceedings, and the judicial department is resorted to only on account of the dereliction of the owner. Hence, the jurisdiction so invoked being special and limited by the act of the legislative department, nothing is taken by intendment in favor of the court's action, but it must appear from the record itself that the facts existed which authorized the court to act, and that it kept within the limits of its lawful authority in so doing."

In Stoneman v. Bilby, 43 Tex. Civ. App. 293, 96 S. W. 50, Speer, J., said: "We are not unmindful of the rule laid down in the Texas cases above cited, to the effect that on collateral attack the presumption is that a sufficient affidavit was filed to authorize the issuance of the citation by publication, but we understand the rule to be that this is a rebuttable presumption, unless rebutting it involves in some way the contradiction of the record. As before shown, the judgment does not recite the filing of affidavit or service upon the defendant in the action, but, on the contrary, * * * does affirmatively show an insufficient affidavit * * * and in such a case the inference is that the service was had upon the defective affidavit, the only one in the record, and the presumption above referred to is therefore overcome. This we understand to be the application of the exact rule announced by us in the cases of Earnest v. Glaser [32 Tex. Civ. App. 378], 74 S. W. 605, and Babcock v. Wolffarth [35 Tex. Civ. App. 512], 80 S. W. 642, in each of which cases a writ of error was refused."

[13] We think, under the rule announced in Mote v. Thompson, supra, the fact that the tax records of Sherman county showed the taxes to have been paid for 1901 and 1902 by Celsor was sufficient to notify the county of the ownership thereof, and the suit, in the face of the tax records, could not properly have been maintained against an unknown owner. Scales v. Wren, 103 Tex. 304, 127 S. W. 164. We quoted in Mote v. Thompson: "The fact of the assessment must have been known to the assessor, when the suit was brought, and the affidavit made that the land belonged to some unknown owner, the court found that the assessor and county knew that it was the homestead of the appellants. Knowing these facts, the suit was filed, process was obtained for unknown owners by the affidavit of the county attorney, and the homestead of appellant sold for taxes which they did not owe. They had done all required of them by law in rendering their property for taxation, and then paid the taxes." Hollywood v. Wellhausen, supra. It is further said in that case: "It follows, therefore, that, unless the facts in this case brought the tax suit clearly within the purview of the statute, the proceeding was null and void, and the judgment was open to attack in any judicial proceeding."

From what has been said, we conclude that both judgments were absolutely void and could not be held to be a link in the chain of title. The remaining assignments of error urged by plaintiffs in error have either been disposed of by what we

have heretofore said in this opinion, or are without merit.

We think the court did not err in giving the peremptory instruction, and the judgment is affirmed.