TEAT et al. v. PERRY. (No. 7734.)

(Court of Civil Appeals of Texas. Galveston. June 4, 1919. On Motion for Rehearing, Oct. 15, 1919.)

1. TAXATION ⊚═668 — JUDGMENT FOR TAX SALE INVALID FOR EXCESSIVE FEES.

Costs in excess of lawful amount taxed by reason of clerk's error in making out an original order of sale upon tax foreclosure renders the judgment therein a nullity as against a minor owner, regardless of the smallness of the amount.

2. TAXATION ⊚═692—COLLATERAL ATTACK ON TAX SALE JUDGMENT.

If a tax sale judgment was without binding force, the objection that the attack upon it was a collateral one would make no difference.

3. MUNICIPAL CORPORATIONS ⊚═980(3)—VALIDITY OF TAX SALE OF MINOR WARDS' LAND.

In view of Houston City Charter of 1905, art. 2, § 2, providing no ordinance shall be enacted inconsistent with, nor shall the city exercise powers prohibited by, general laws or the Constitution, and article 3, § 8, providing that on tax foreclosure an order of sale shall be issued and the land sold "as in other cases of foreclosure," and Vernon's Sayles' Ann. Civ. St. 1914, art. 2000, excepting judgments against executors and administrators and guardians, and article 2004, providing for payment of such taxes as a claim against the estate, a sale of ward's land under a tax judgment was invalid.

4. APPEAL AND ERROR ⊚═843(2)—UNNECESSARY QUESTION NOT DETERMINED.

Where a tax sale of a minor ward's land is invalid, it becomes unnecessary on appeal to decide whether the general principle that one who owes the duty to pay the tax cannot acquire the title at a sale thereof is applicable to the guardian.

5. TAXATION ⊚═814(1) — REIMBURSEMENT OF OWNER OF INVALID TAX TITLE.

In plaintiff's suit in trespass to try title to land claimed by others under tax sale, held that equity and conscience required that defendants be given back what they were properly shown to have paid out for such taxes as constituted a lien upon the property, particularly in view of the petition's offer to do all equity required of plaintiff.

On Motion for Rehearing.

6. TAXATION ⊚═810(3)—EVIDENCE SHOWING TAXES PAID WERE LIEN ON PREMISES.

In an action of trespass to try title, defended on the ground of tax title, evidence in the absence of objection thereto held sufficient to show that taxes paid by defendants for certain years constituted a valid lien against the land, for which defendants should recover from plaintiff owner.

7. MUNICIPAL CORPORATIONS ⊚═980(3)—FEES IN SUIT FOR TAX SALE.

Under the Houston City Charter 1905, except as otherwise specified therein, the fees of officers in suits for sale of property to pay taxes are the same as those in similar suits for state and county taxes under Vernon's Sayles' Ann. Civ. St. 1914, art. 7691.

8. MUNICIPAL CORPORATIONS ⊚═980(3)—ATTORNEY'S FEES IN TAX SALE SUITS.

The 5 per cent. allowance for attorney's fees in city tax suits under Houston City Charter, art. 3, § 8, supersedes the provision of Vernon's Sayles' Ann. Civ. St. 1914, art. 7691, which is otherwise applicable, in view of articles 7693, 7699, so that such fee is allowable.

Appeal from District Court, Harris County; K. C. Barkley, Special Judge.

Action by Osceola Perry against George L. Teat and others in trespass to try title. Judgment for plaintiff, and defendants appeal. Judgment reformed and affirmed upon motion for rehearing.

Jno. W. Lewis and B. F. Louis, both of Houston, for appellants.

Carothers & Brown, of Houston, for appellee.

GRAVES, J. In so far as appellants' claim of title to the land here involved is concerned, part of the Grota homestead tract out of the John Austin two-league grant in Harris county, Tex., the correctness of the judgment they now appeal from depends upon whether or not a sale of it for taxes under a judgment therefor in favor of the city of Houston was invalid. If the tax sale under which they claimed was invalid or void, which they vigorously deny, appellants in this court admit that they showed no title, and in effect concede that judgment for the land properly went for the appellee, coupled as it was with a recovery against the latter in their favor for what they were adjudged to have paid out for taxes, with a lien upon the property to insure its payment. Of this portion of the judgment awarding such recovery against her the appellee, in turn, complains through cross-assignments, to which further reference will later in this discussion be made.

The question of the validity of the tax sale is logically of first concern. The facts underlying it were these:

In March of 1909 Lewis and Austin took a deed from one Mills to the land in controversy, which the evidence shows had, prior to that time, and as far back as about 1858, been continuously claimed by the appellee and her ancestors. In October, 1909, the city of Houston recovered judgment in the district court of Harris county against Lewis, Austin, their grantor Mills, and E. F. Perry, as guardian of the estate of appellee here, she being then a minor upon whose estate guardianship was pending, all of whom it had made parties to the tax suit, for the sum of $382.45, with interest and costs, for taxes accruing to the city on the land for the years 1904 to 1908, inclusive, together with fore-closure of the tax lien and order of sale through the processes of that court against all the parties, including the guardian of appellee's estate. No provision was made for certifying the judgment as against the guardian to the probate court for observance, but execution duly issued out of the district court, and the land was sold thereunder on March 1, 1910, to appellant George L. Teat for the sum of $450, to whom a sheriff's deed, purporting to convey the right, title, and interest of all of the parties in the property, including that of the minor, was accordingly made. The evidence was uncontroverted that Lewis and Austin furnished most of the money, and that the conveyance was taken in Teat's name for the benefit of all three of them. Lewis and Austin had waived service of process in the tax suit, entered their appearance, and agreed that judgment against them for the full amount the city claimed for taxes might be rendered, which in the manner above stated was done, the judgment reciting that it was to be satisfied only out of proceeds realized from the tax sale.

It appears from the cost bill in this sale for taxes that, because of an error made by him in making out the original order of sale the district clerk issued an alias order, and that, apart from a fee of $15.05, allowed an attorney for bringing the suit, he and the sheriff actually collected the following items:

Clerk's Costs:
For costs preliminary to the issuance of the
first order of sale.............................$ 8 20
Original order of sale and return................1 50
Alias order of sale and return................... 1 50
                                          $11 20

Sheriff's costs:
Serving citations ...............................$ 2 25
Jury fee ........................................ 50
Mileage ......................................... 1 50
Costs on order of sale which was returned
because of the clerk's error.................... 6 50
Costs on alias order of sale..................... 9 00
Costs in the way of commission alias order of
sale ........................................... 12 00
                                                

   Total ........................................$31 75

In contending that this tax sale was in all respects regular and valid, that it was not subject to collateral attack in this proceeding, and that it passed a clear title to the land to them, appellants very ably present two further arguments, stated by themselves in this way:

"Point 3. The statutory provision for tax liens, and suits to establish and foreclose such liens, and for sale of the property under such order of sale, are special provisions with reference to such particular subject-matter, and must be followed; and they apply to minors as well as persons sui juris, and such provisions, therefore, will take precedence over general statutes in reference to the collection of ordinary claims or judgment from minors and their estates.

"Point 4. The probate court did not have jurisdiction to give to the city of Houston full and complete relief in the foreclosure of said tax lien and the sale of said land thereunder as could the district court (being a court of general jurisdiction, and of special jurisdiction in foreclosure of tax liens), and it was therefore proper for the district court to render judgment foreclosing said lien, and to decree that order of sale should issue as against all of the defendants, thereby providing for the enforcement of the rights of the city against all of the defendants in one and the same proceeding."

On the other hand, the appellee attacks the sale as being invalid upon two grounds: First, the fees collected as costs were greater than the law allows; second, the fact that she was a minor at the time, with guardianship pending upon her estate in the probate court, entitled her to have the tribunal, rather than the district court, direct the sale as against her interest.

After careful consideration of the opposing views thus presented, we are constrained to agree with the appellee and to hold the tax sale invalid for both the reasons given. She strongly insists that, although the suit was one for taxes brought by the city of Houston under its charter of 1905 (Special Laws 29th Leg. 1905, p. 131), article 7691 of Vernon's Sayles' Statutes, prescribing fees of officers in similar suits for state and county taxes, applies, and that, as therein provided and as is held in the case of Hill et al. v. Lofton, 165 S. W. 67, so construing it, all of the fees here collected were illegal, except $1.50 allowed the clerk and $1 to the sheriff by this statute.

[1] That may be the correct view to take, but we find it unnecessary to determine the matter that far, and do not do so, for the reason that the $1.50 of the clerk's cost and the $6.50 of the sheriff's, arising wholly from an error on the part of the clerk in making out the original order of sale here, were clearly, we think, in no event chargeable against appellee's interest, and rendered the sale a nullity as against her. It is not even claimed that any statute permitted those charges; neither would the smallness

of the amount affect the matter. Lufkin v. City of Galveston, 73 Tex. 340, 11 S. W. 340; May v. Jackson, 73 S. W. 988.

[2] And if it was so without binding force, the objection that the attack upon it was a collateral one would make no difference. See paragraph (6), Hill et al. v. Lofton, supra, at page 70, and authorities there cited.

[3] Appellants' argument under their "point 3," that tax foreclosure proceedings generally under our Constitution and statutes are special in their character, must be strictly followed, and that they operate alike against minors and all other persons, since no exceptions are made, is one of much force and plausibility. If otherwise sound, however, it is not thought to be properly applicable in this instance, mainly upon the consideration, as above stated, the tax sale here was made under the Houston City Charter of 1905. In section 2 of article 2 of that instrument it is provided that no ordinance shall be enacted inconsistent with, nor shall the city exercise any power prohibited by the general laws or the Constitution of the state. In section 8 of article 3 this provision occurs:

"In suits for taxes, the proper persons shall be made parties defendant in such suit, shall be served with process and other proceedings had therein, as provided by law for suits of like character in the district courts of this state; and in case of foreclosure, an order of sale shall issue and the land be sold thereunder, as in other case of foreclosure, which order of sale shall have all the force and effect of a writ of possession between the parties to the suit and any person claiming under the defendant by any right acquired after the filing of the suit."

So that the city was not only not at liberty to trench upon the general laws of the state in reference to foreclosure sales for taxes, but was by this limitation in section 8 remitted to the same procedure there obtaining "in other cases of foreclosure." What was that procedure? The answer is found in article 2000, Vernon's Sayles' Statutes, the relevant portion of which is this:

"Judgments for the foreclosure of mortgages and other liens shall be that the plaintiff recover his debt, damages and costs, with a foreclosure of the plaintiff's lien on the property subject thereto, and, except in judgments against executors, administrators and guardians, that an order of sale shall issue to the sheriff or any constable of the county where such property may be, directing him to seize and sell the same as under execution, in satisfaction of the judgment. * * *"

Then succeeding article 2004 completes the specially prescribed process where a minor's estate is involved, as follows:

"Where a recovery of money is had against an executor, administrator or guardian, as such, the judgment shall state that it is to be paid in the due course of administration, and no execution shall issue on such judgment, but the same shall be certified to the county court, sitting in matters of probate, to be there enforced in accordance with law."

It will be noted that article 2000 makes no distinction between different kinds of liens, but applies to "mortgages and other liens" generally, including, of course, those for taxes, thus expressly and specifically interdicting the issuance of an order of sale out of the court foreclosing a lien of that character as against a guardian, and leaving that to be done through the probate court where the estate is being administered, as directed in article 2004. Such, therefore, must be the general rule, and to take a particular case out of its operation, granting that it may under some circumstances be done, facts constituting the exception must clearly appear. Lauraine v. Ashe (Sup.) 191 S. W. 563, 196 S. W. 501; Lauraine v. Vaughn, dissenting opinion and cited authorities, 193 S. W. pp. 712, 713. Were there any such here? Appellants, under their "point 4" above quoted, insist that the single circumstance of Lewis, Austin, and appellee's guardian having all been joined as defendants by the city in the suit to collect the taxes presented a condition rendering the powers of the probate court inadequate to give complete relief, citing as their main reliance the holding by majority opinion of this court in the recent cases of Lauraine v. Masterson et al., 193 S. W. 705 et seq.; but the facts there clearly distinguish those cases from the one now under consideration. In the first place, they were not tax suits, which are strictly statutory proceedings wherein the court exercises a limited jurisdiction, and not one for the purpose of adjusting equities between parties; in the second place, even if the narrowed reaches of a simple suit by the city to subject property to the payment of taxes had been the place to do it, there were in this instance no equities whatever to be adjusted; there was not even claimed to be a joint obligation between the opposing claimants of the property to pay the taxes they were sued for, since their asserted rights therein emanated from wholly different sources, and they were merely made joint defendants by the city; hence there was lacking the determining consideration upon which this court sustained the authority of the district court to order the sale of Mrs. Allen's property in Lauraine v. Masterson, supra. See both opinions in that case, 193 S. W. at pages 710, 711, and 713. There being, therefore, no common claim of ownership of the property, no character of joint undertaking to pay the taxes upon it, and no pretense otherwise of any outstanding equities between those the

city thus chose to make joint parties to the same suit, having for its sole objective the prosecution to final result of an asserted lien for taxes, it is thought the resulting situation, as affecting the minor's estate, was the same as if her guardian had been sued alone, and consequently did not present such a state of facts as entitled the city of Houston to have her interest sold through the district court instead of the probate court, where the guardianship was then pending. R. S. 1911, art. 2000; Allen v. Reilly, 62 Tex. Civ. App. 624, 131 S. W. 1152; Stafford v. Harris, 82 Tex. 178, 17 S. W. 530; Rose v. Newman, 26 Tex. 132, 80 Am. Dec. 646; Meyers v. Evans, 68 Tex. 466, 5 S. W. 66; Schmidt v. Huff, 7 Tex. Civ. App. 593, 28 S. W. 1053; R. S. arts. 4230, 4234; Horton v. Garrison, 1 Tex. Civ. App. 31, 20 S. W. 773.

Indeed, in the Allen v. Reilly Case it is expressly held that a sale for taxes due by an estate must be made through the probate court; and, especially in the absence of contrary authority, no good reason is perceived as to why it should not be so.

From these deductions it follows that the tax sale, being invalid for the reasons given, could not become the means of extinguishing the minor's title in favor of the appellants here. They having shown no other title, and she having both pleaded and produced sufficient proof, as we think, to sustain a title in herself by limitation, the court below properly gave her judgment for the land. That part of the judgment is accordingly in all things affirmed.

[4] The appellee also very earnestly contends that, apart from any question as to its invalidity, the tax sale to appellants could not, upon the facts surrounding it, become the medium of any title into them as against her, under the general principle that one who owes the duty to pay the tax cannot acquire a title at a sale therefor, but will be held to have merely paid what he owed without effecting any change in the title. Many authorities from other jurisdictions are cited as supporting the position, but as none from Texas are presented, and as the determination of its applicability here is obviously unnecessary, under our conclusion that this sale was invalid, it is not thought essential that the matter be gone into.

The cross-assignments relating to the recovery against appellee of what appellants were held to have paid out for taxes upon the land alone remain for disposition. Her chief complaint is that, in addition to taxes for the years 1904 to 1908, inclusive, which were embodied in the joint judgment obtained by the city against them all, appellants were awarded a recovery against her of amounts claimed to have been paid by them for taxes for the years 1909 to 1913, inclusive, with neither proof that these had been properly levied and assessed against the land, nor that they constituted for the amount adjudged a lien thereon. Upon examination of the record, its condition in this respect is found to be as claimed. Consequently, so much of the different cross-assignments as raise that issue must be sustained, and the part of the judgment decreeing a recovery in favor of appellants for the sum of $1,266.67 and interest, with a lien upon and order of sale against the land to secure its payment, must be reversed, and that branch of the cause be remanded for further proceedings as herein provided.

[5] Upon the general principles of equity as applied by the courts in similar controversies, we conclude that in the forum of conscience it is just and right that appellants be given back what they are properly shown to have actually paid out for such taxes as constituted a lien upon the property. State v. Dashiell, 32 Tex. Civ. App. 454, 74 S. W. 781; Railroad Co. v. Hoffman, 193 S. W. 1143.

The testimony discloses that appellee admitted never having paid any taxes at all on the property herself, nor did her guardian, although testifying as a witness at this trial, claim that he ever had. The validity of the judgment itself for a portion of the taxes recovered for, that is, for the amounts accruing for the years 1904 to 1908, inclusive, was not questioned, the sale made under it alone being attacked for the irregularities we have held fatal to it. The appellants, while, as has above been stated, abandoning in this court any claim of title they may have had to the land, other than such as they acquired by virtue of the tax sale, did in the court below claim under a record title from the sovereignty of the soil down into themselves, and, when the appellee here, who was the plaintiff below, and as such, had sued them in trespass to try title to the land, attacked one of the links in that title as being forged, simply introduced no evidence to controvert the affidavit so charging, and thereby failed to maintain the integrity of the connected paper title they offered. In her petition tendering them the issue as to who had title to the land, the appellee, in order to become entitled to recover, offered to do all such equities as might be required of her.

In all these circumstances, it is not thought the court erred in requiring her to return all that appellants had paid out for actual taxes and proper collection charges thereon, but only in fixing an amount without sufficient proof that it comprehended nothing more nor less than such an amount.

Pursuant to these conclusions, the portion of the judgment awarding the money recovery against appellee is reversed, and that

feature of the cause is remanded, with instructions to the trial court to hear evidence and determine the total sum paid out by appellants for such taxes as constituted a valid lien upon the land, including the amount of the judgment referred to and such costs as the law allowed, exclusive of any arising from the invalid sale, and then to enter judgment in their favor against the appellee for the sum so ascertained, coupled, as before, with a lien upon the property to insure its payment.

Affirm in part.

Reversed and remanded, with instructions in part.

### On Motion for Rehearing.

After careful consideration of appellants' motion for rehearing, it is determined that all conclusions originally announced should be adhered to, except the holding that the proof did not show the amount awarded them below in reimbursement for payments they had made on taxes for the years 1909 to 1913, inclusive, to have been in satisfaction of a lien therefor upon the land. They alleged in their pleadings that they had paid taxes, interest, and costs, levied and charged against the property—

"in the sums for the years and upon the dates, as follows: On May 20, 1910, taxes for the year 1909 in the sum of $65.16. On May 11, 1912, taxes for the years 1910 and 1911, in the sum of $133.63. On December 28, 1912, taxes for the year 1912, in the sum of $113.40. On December 21, 1913, taxes for the year 1913, in the sum of $139.86."

Mr. Lewis, one of the appellants, then testified without objection that they started paying taxes after their purchase of the property at tax sale, and paid them, as shown in the pleadings, until this suit was filed, when they quit; the record discloses nothing to the contrary.

[6] We now conclude that, in the absence of any objection to this method of proving the payment of taxes, or of their constituting a valid lien against the land, we erred in holding it insufficient. The portion of our former judgment reversing and remanding the cause for further hearing upon the tax payments will accordingly be set aside, and the trial court's judgment for money in favor of appellants will be affirmed, with this modification: They were awarded the sum of $1,266.67, with interest at 6 per cent. per annum from that date until paid, but this total included, in addition to the principal sum for taxes, an aggregate of $58 as costs in the tax suit, for which amount the record affirmatively shows the land to have been sold. This itemized bill for such costs being attached to and made part of the order of sale:

### Bill of Costs.

Clerk's costs:

| | |
|---|---:|
| Docketing | $ 20 |
| Filing | 45 |
| Entering appearances | 30 |
| Issuing citations | 4 50 |
| Entering judgment | 1 00 |
| Executing alias and return | 1 50 |
| Taxing costs | 25 |
| Affidavits | 1 50 |
| | $9 70 |

Sheriff's costs:

| | |
|---|---:|
| Serving citations | $2 25 |
| Jury fee | 50 |
| Mileage | 1 50 |
| Total | $4 25 |
| Attorney's fees | $15 00 |

Recapitulation of costs as per original order of sale:

| | |
|---|---:|
| Clerk | $ 9 70 |
| Sheriff | 4 25 |
| Attorney | 15 00 |
| Total | $29 05 |

Costs which accrued on original order of sale which was ordered returned by the clerk on account of an error therein:

| | |
|---|---:|
| Levy. | $1 00 |
| 4 notices | 4 00 |
| Posting | 1 00 |
| Return | 50 |
| Total | $6 50 |
| Sheriff's costs on alias order of sale | $ 9 00 |
| Sheriff's commission on alias order of sale | 12 00 |
| District clerk's costs on alias order of sale | 1 50 |
| Grand total of above costs | $58 00 |

[7] In our original opinion we held $8 of this $58 for costs illegal, rendering the tax sale invalid, but declined to go further and hold that the amounts which might properly be charged and collected as costs in a suit for taxes of the character here involved should be determined by article 7691, Vernon's Sayles' Statutes. Upon reconsideration, we conclude that the costs specified in that article, except as modified or changed by Houston's City Charter, should have been applied in this instance, and that, as is therein provided, no greater charge than $1.50 for the district clerk's services "in the case" and $1 for the sheriff "for selling and making deed to the purchaser" were legally collectible. From this it results that the clerk should have been allowed $1.50 only in lieu of the $9.70, $6.50, and $1.50 items appearing in the bill, and the sheriff $1 in lieu of the $12 commission on the sale. These deductions take a total of $27.20 from the $58 actually collected as costs, to which $27.20 should be added 6 per cent. interest thereon per annum from the date of the tax sale, March 1, 1910, to the date of the money judgment in favor of appellants in this suit, March 13, 1918, yielding a final credit of $40.30, which should come off of the $1,266.67 awarded them. The judgment in their favor will therefore be reduced to $1,226.37, and, as so reformed, will be in all respects

affirmed, bearing interest and carrying the lien on the land as before.

[8] As to the attorney's fee of $15 appearing in the cost bill, we think the 5 per cent. allowed for that purpose in city tax suits under section 8 of the Houston City Charter (Special Laws 29th Leg. pp. 148, 149) superseded the provisions of article 7691, which we have held otherwise applicable. It is true that article 7691 does not in terms cover any but state and county taxes, but other sections of the same law indicate, we think, that it was intended to be applied in city tax suits also. See the sections of the Houston City Charter referred to in our former opinion, and articles 7693 and 7699, Vernon's Sayles' Statutes; Hill v. Lofton, 165 S. W. 67.

To the extent stated, the motion is granted, and the trial court's judgment for money in favor of appellants reformed and affirmed as herein indicated, but in all other respects it is refused, and this court's former judgment is left unchanged.

Granted in part, and the trial court's judgment reformed and affirmed.